**Ricky Wayne GAMBLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–99–00075–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 30, 1999.

Robert E. Hoskins, Galveston, for appellant.

Michael J. Guarino, B. Warren Goodson, Jr., Galveston, for state.

Panel consists of Justices COHEN, TAFT, and SMITH.*

**OPINION**

MURRY B. COHEN, Justice.

After his pretrial suppression motion was denied, appellant pled guilty under a plea bargain agreement to the offense of possession of less than one gram of cocaine. The trial judge deferred punishment, assessing three years of community supervision. We reverse and remand.

■ In his sole issue, appellant argues the trial judge erred in denying his suppression motion because the evidence against him was obtained during an illegal detention, search, and arrest, in violation of his constitutional rights. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9.[1] We follow the usual standard of review for denial of a suppression motion based on these grounds. *Guzman v.*

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Appellant does not argue that the Texas Constitution affords greater rights in an investigative detention, arrest, or inventory search. Neither does he brief the State constitutional grounds separately from the federal ones. Therefore, we do not separately address appellant's state constitutional claims. *Busby v. State,* 990 S.W.2d 263, 270 (Tex.Crim.App. 1999), *cert. filed,* No. 99–5467 (July 28, 1999); *see Heitman v. State,* 815 S.W.2d 681, 690 n. 23 (Tex.Crim.App.1991).

*State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

Texas City Police Officers Stoker and Spottedbear were conducting a routine patrol in a marked police car near 6322 Park Street, a residence, at 3:00 a.m. The block was known for "heavy" drug sales; the police had been called either to this area or the residence about 70 times in a year, including many "disturbance calls" and calls for trespassing. Officer Stoker had personally answered four calls on the block over a two-month period, two to the particular residence; Officer Spottedbear had personally answered five or six calls to the residence and had once arrested someone there for dancing naked, a "disturbance." Neither officer had ever arrested anyone there for drugs or weapons. The officers saw appellant either standing on the street's shoulder directly in front of, or about 30 feet away from and walking toward, the residence. They were suspicious because, as they passed appellant, he stopped and kept turning around to watch their patrol car. The officers turned their car around and, as they again approached him, appellant walked away, raising the officers' suspicions. Officer Spottedbear suspected appellant might have a weapon or might be going to the residence without permission, given prior disturbance calls on that house and the fact that Officer Spottedbear knew appellant was not the homeowner. The officers stopped appellant for a "field interview," to determine who he was and what he was doing.

The officers asked appellant his name and what he was doing; appellant said he was walking. Then, apparently even before asking appellant for his address, the officers had appellant place his hands on the patrol car to conduct a pat-down search for safety reasons, per standard procedure. No arrest had yet taken place. When Officer Stoker asked appellant to remove his cap, appellant quickly pulled his hands from the car and stood upright, as if he did not want his cap removed. Fearing appellant had a weapon in his cap,

the officer removed the cap, placed his hand inside, and immediately found what looked like a glass, crack-cocaine pipe. The pipe was in the cap's brim, which could also hide a small weapon. The officers then arrested appellant for possessing drug paraphernalia. During the standard personal-property inventory conducted at booking, two rocks of crack cocaine were found in appellant's wallet.

The officers admitted appellant committed no wrongful act in their presence and that it was not illegal to be on the street or in front of that residence, to look at a passing police car, or to change directions while walking. The officers had received no calls concerning that residence that night, and they did not see appellant enter, leave, or talk to anyone on the residential premises.

We hold that appellant's initial stop was an investigative detention, not a consensual encounter, as evidenced by the pat-down search. *See State v. Velasquez*, 994 S.W.2d 676, 678–79 (Tex.Crim.App. 1999) (to distinguish a detention/arrest from a consensual encounter, "the issue is whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter"). An investigative detention is generally justified if specific, articulable facts, taken together with their rational inferences, lead the detaining officer to conclude that the detainee may be associated with a crime. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App.1997). We review the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *Woods*, 956 S.W.2d at 38.

Here, the sole bases for the detention were (1) the area had a history of drug sales; (2) the police had had frequent calls to the area or the residence over the last year; (3) it was 3:00 a.m.; (4) appellant was either standing in the street near, or

walking in the street toward, a residence to which the officers had been called in past, but at which they had never made arrests for drugs or weapons; and (5) appellant watched the marked police car and walked away from it when it turned around. We hold these facts do not give rise to the reasonable suspicion needed to detain appellant. *See Scott v. State,* 549 S.W.2d 170, 172–73 (Tex.Crim.App.1976) (holding detention illegal despite fact that area was "high. crime area"; thefts had been committed there before; the detainees were driving on a dark, sparsely traveled street at 1:30 a.m.; and materials were observed in the back of their car as it drove past); *Benton v. State,* 576 S.W.2d 374, 375 (Tex.Crim.App.1978) (holding detention illegal despite fact that detainees were driving on sparsely traveled street at 4:45 a.m.; three burglaries had occurred in the area before, usually between 3:00 a.m. and 5:00 a.m.; and the detainees drove in a "zig-zag" pattern to or through the area). *Compare Amorella v. State,* 554 S.W.2d 700, 702 (Tex.Crim.App.1977) (holding detention legal when officer observed detainee's car with motor running and trunk open; time was 1:30 a.m.; location was closed store's parking lot in "high crime" area; no store in area was open; car was immediately next to store, although parking lot was extensive; and car's occupants watched and then drove away as officer drove by).

Standing alone, neither the area's high-crime reputation nor appellant's watching the passing police car would have sufficed to justify a detention. *Gurrola v. State,* 877 S.W.2d 300, 303 (Tex.Crim.App.1994) (area's reputation); *Rodriguez v. State,* 578 S.W.2d 419, 420 (Tex.Crim.App.1979) (glancing at police car). Nor do these facts give rise to reasonable suspicion when considered under the totality of the circumstances to which the officers testified here. *See Scott,* 549 S.W.2d at 172–73.

We distinguish the cases on which the State relies. In *Sanders v. State,* the court found reasonable suspicion for a detention when, among other things, the detaining officer (1) had received a dispatch reporting an attempted burglary in the area involving two suspects and (2) saw two men in a car—near, but heading away from, the crime scene and going the same direction as had the suspects—within a few minutes of the call. 992 S.W.2d 742, 749 (Tex.App.—Amarillo 1999, pet. ref'd). That did not happen here. In *Salazar v. State,* the defendant was detained after fleeing from the doorstep of a residence on which a warrant was being executed. 893 S.W.2d 138, 142 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd, untimely filed). That did not happen here. In *Hall v. State,* the court upheld a pat-down weapons search conducted when the police were surveilling a residence suspected of being a crack house; they had already found cocaine on others leaving the residence; the home's owner had consented to a search; and the defendant, appearing nervous, was "milling about" in a dimly lit area in front of the residence. 928 S.W.2d 186, 187–88 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). That did not happen here. Finally, in *Woods v. State,* the defendant, who was convicted of unlawfully carrying a firearm, was detained after she had entered a courthouse, appeared nervous when she saw x-ray machines, and then exited the building; the detaining officer testified people carrying drugs or weapons often behaved as the defendant had. 970 S.W.2d 770, 772, 774 (Tex.App.—Austin 1998, pet. ref'd) (on remand). Here, in contrast, appellant was merely standing or walking in a street near a residence, and the officers did not testify that appellant's movements fit a specific "criminal profile."

Accordingly, we hold appellant was illegally detained. Therefore, we hold the trial judge erred in denying appellant's motion to suppress the evidence obtained

from his illegal detention.[2] *See* TEX.CODE CRIM. P. ANN. art. 38.23(a) (Vernon Supp. 2000).

We sustain the sole issue.

We reverse the judgment and remand the cause.

2. Appellant also challenges the legality of the pat-down search and the seizure of the co-caine during his booking; having found appellant's initial detention illegal, we need not reach these challenges. *See Shelby v. State,* 888 S.W.2d 231, 234 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).