# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00217-CR

**Ryan Jeffery Tanner, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. D-1-DC-05200343, HONORABLE JON N. WISSER, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

In deciding this case, the majority falls prey to the danger of empowering law enforcement to such a degree that the Fourth Amendment rights of Texas citizens, innocent and guilty alike, are cast aside.

> While the machinery of law enforcement and indeed the nature of crime itself have changed dramatically since the Fourth Amendment became part of the Nation's fundamental law in 1791, what the Framers understood then remains true today—that the task of combating crime and convicting the guilty will in every era seem of such critical and pressing concern that we may be lured by the temptations of expediency into forsaking our commitment to protecting individual liberty and privacy.

*United States v. Leon*, 468 U.S. 897, 929-30 (1984) (Brennan, J., dissenting).

The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Wherever an individual has a reasonable expectation of privacy, he

is entitled to be free from unreasonable governmental intrusion, and this "inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968). This inestimable right of personal security is severely eroded when a law enforcement officer may detain any individual who happens to be near a closed business at a late hour.

As the majority notes, in reviewing whether reasonable suspicion exists to justify an investigative detention,[1] we must look only at those facts known to the officer at the inception of the stop—a stop or search unlawful at its inception may not be validated by what it turns up. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963). If an officer stops an individual based merely on a hunch that the individual is "up to no good," the fact that the hunch turns out to be correct does not retroactively validate the stop.

The majority's insistence that a determination of reasonable suspicion must be made without referring to cases with similar facts disregards the fundamental principles of a legal system based on precedent. While it is true that the U.S. Supreme Court stated in *Ornelas v. United States*, 517 U.S. 690, 698 (1996), that a reasonable-suspicion inquiry is "multifaceted," and that determinations made in other cases "'will seldom be a useful "precedent" for another,'" it went on

---

[1] An investigative detention is distinguishable from a consensual encounter, which does not infringe on a constitutional right and requires no justification. *Florida v. Royer*, 460 U.S. 491, 497-98 (1983). An officer without reasonable suspicion of criminal activity may question an individual during a consensual encounter, "as long as the person to whom questions are put remains free to disregard the questions and walk away." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). However, an investigative detention occurs when a person's freedom of movement is restrained, either by physical force or a show of authority. *Johnson v. State*, 912 S.W.2d 227, 234 (Tex. Crim. App. 1995). An investigative detention constitutes a seizure and invokes constitutional safeguards. *Mendenhall*, 446 U.S. at 553.

to say, "[b]ut there are exceptions," such as cases that are so factually similar that it would be inconsistent to decide one differently from the other. "After all, treating like cases alike is the great engine of the law." *Taber v. Maine*, 67 F.3d 1029, 1038 (2d Cir. 1995).

We have such a factually similar case in *Gamble v. State*, 8 S.W.3d 452, 453-54 (Tex. App.—Houston [1st Dist.] 1999, no pet.), which not only involved "suspicious surroundings," which the majority insists are sufficient to establish reasonable suspicion, but also included "suspicious" behaviors by the subject that are not present in our case. In *Gamble*, the court found that reasonable suspicion was not established where an individual was walking at 3:00 a.m. in an area with a history of drug sales near a residence where police had recently been called several times, and the subject repeatedly turned around to watch a police car, then began walking away when the car turned in his direction. *Id.* at 453-54.

By maintaining that reasonable suspicion was established by the fact that Tanner was coming from behind a closed business establishment at 3:00 a.m. in an unlit area, the majority chooses to ignore the reasonable-suspicion standards used in *Gamble* and *Klare v. State*, 76 S.W.3d 68, 75 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). In *Klare*, the fact that an individual was observed in close proximity to a closed business establishment at 2:30 a.m. was insufficient to establish a reasonable suspicion.

The majority criticizes *Klare*, claiming that there are "errors in its analysis." However, the court in *Klare* did not, as the majority suggests, view the factors of time of day, proximity to closed businesses, and criminal activity in the area independently from each other in determining whether reasonable suspicion existed. The *Klare* court viewed these considerations as

3

"facts which focus on the suspect's surroundings rather than on the suspect himself," so that while such factors are relevant, "an additional fact or facts particular to the suspect's behavior" are required to justify reasonable suspicion. *Id*. at 75. The court examined an array of cases to determine whether under the totality of the circumstances, the time of day, the fact that businesses nearby were closed, and recent criminal activity in the area could be sufficient to establish reasonable suspicion. Only then did the court determine that where other Texas courts have found reasonable suspicion, additional factors were present beyond those related to the suspect's surroundings, stating that "[i]n the instant case, there are fewer facts on which to base reasonable suspicion." *Id*. at 76.

*Klare*, which has not been overruled, was cited favorably by this Court in *Cronin v. State*, No. 03-04-00266-CR, 2005 Tex. App. LEXIS 10450, at *14-15 (Tex. App.—Austin Dec. 16, 2005, no pet.) (mem. op., not designated for publication).[2] *Klare* has also been cited favorably by other appellate courts. *See Young v. State*, 133 S.W.3d 839, 843 (Tex. App.—El Paso 2004, no pet.) (holding that reasonable suspicion did not exist where officers pulled over car that had been seen leaving house that was under surveillance for narcotics activity);

---

[2] The facts in this case are distinguishable from those that resulted in a finding of reasonable suspicion in *Cronin*. In *Cronin*, this Court emphasized that in addition to the fact that the subject drove an automobile out from behind a closed business late at night, (1) there had been recent unsolved vandalism in the area, (2) there had been a complete absence of vehicles in the area after midnight for the past two months, (3) the vehicle emerged from a concealed area behind a closed business that did not serve as a thoroughfare, so that the subject could not have been cutting through from another road, and (4) the arresting officer articulated each of these factors. *Cronin v. State*, No. 03-04-00266-CR, 2005 Tex. App. LEXIS 10450, at *16-17 (Tex. App.—Austin Dec. 16, 2005, no pet.) (mem. op., not designated for publication). None of these factors are reflected in the record before us. Furthermore, Chief Justice Law, who inexplicably joins in the majority opinion today, dissented in *Cronin*, stating that reasonable suspicion was not established where "the State presented no additional facts beyond Cronin's presence in a parking lot of a closed business at 1:30 a.m." *Id*. at *23 (Law, C.J., dissenting).

4

*McCarty v. State*, No. 11-02-00003-CR, 2003 Tex. App. LEXIS 1976, at *4-5 (Tex. App.—Eastland Mar. 6, 2003, no pet.) (mem. op., not designated for publication) (holding that factors related to vehicle's surroundings, such as time of day, coupled with fact that officer recognized occupant as suspect in local burglary, established reasonable suspicion to detain vehicle).

The majority attempts to distinguish *Klare* and *Gamble* from the instant case by emphasizing that Tanner was not walking on a public sidewalk or parking lot that was observable from a public roadway. However, the record does not support this assertion—it contains no indication that Tanner was on private property at the time he was observed by Maldonado. Maldonado's testimony establishes only that Tanner came "from a dark area behind the bar."

The U.S. Supreme Court has also taken the view that factors related to the suspect's surroundings alone are not sufficient to establish reasonable suspicion, stating that there are two elements that must be present before a stop is permissible: (1) there must be an assessment "based upon all of the circumstances," which include "the modes or patterns of operation of certain kinds of lawbreakers," from which "a trained officer draws inferences and makes deductions," and (2) this assessment must "raise a suspicion that the *particular individual* being stopped is engaged in wrongdoing." *United States v. Cortez*, 449 U.S. 411, 418 (1981) (emphasis added). Maldonado may have determined that the location and time of night made Tanner's presence suspicious, based on the patterns of operation of certain kinds of lawbreakers. However, the second element of the *Cortez* test has not been met where there are no factors present that raise a suspicion that Tanner, as a particular individual, was engaged in wrongdoing.

5

Tanner's presence at that particular time and location was not necessarily suspicious in light of the circumstances. There was no testimony to establish that this was a high-crime area or that the vicinity had a history of burglaries, vandalism, or drug trafficking. The record does not contain evidence, such as reports of broken windows or burglar alarms, that would suggest that criminal activity had taken place in or around the Lone Star Bar that particular early morning. Maldonado testified that the Lone Star Bar typically closes between 1:30 and 2:00 a.m. and that he was not aware of how long it would take bar employees to close down the establishment after closing time. It would not seem unreasonable for employees of the Lone Star Bar to be exiting the building around 3:00 a.m. after completing a shift. Furthermore, Maldonado observed Tanner and his companion cross a major roadway and head in the direction of a residential area, which is consistent with the expected activity of employees returning to their homes after work. The act of walking bikes from behind a closed business establishment, particularly at an hour when it could be expected that employees would be leaving the establishment, does not warrant a reasonable suspicion of criminal activity without additional facts.

The majority makes note of Maldonado's testimony that his suspicions increased when Tanner's companion stopped soon after Maldonado flashed his patrol car's lights, but Tanner continued walking until Maldonado drove up to him. After Maldonado called out to him, however, Tanner merely continued walking without changing his pace or direction and there is nothing in the record to indicate when Tanner first saw the lights or heard Maldonado.

While flight from a show of authority may be a factor in determining whether there is reasonable suspicion, flight must "be considered in context of the surrounding circumstances,"

6

including whether the subject exhibited suspicious activity. *State v. Perez*, 56 S.W.3d 796, 799 n.1 (Tex. App.—Eastland 2001) (citing *Illinois v. Wardlow*, 528 U.S. 119 (2000)), *rev'd on other grounds*, 85 S.W.3d 817 (Tex. Crim. App. 2002). In *Wardlow*, reasonable suspicion was established when an individual standing next to a building holding an opaque bag in an area known for heavy narcotics trafficking turned and ran in the opposite direction after looking in the direction of police officers. 528 U.S. at 122. Tanner's action of continuing to walk his bike at the same pace and in the same direction is unlike the unprovoked headlong flight described in *Wardlow* to justify a stop. Furthermore, Tanner's action of walking away at the same pace and direction without looking over his shoulder or otherwise acknowledging the police presence does not rise to the level of sudden flight in the presence of a police officer that is typically used to establish reasonable suspicion. *See, e.g., United States v. Silva*, 957 F.2d 157, 158 (5th Cir. 1992) (subject "broke into a run" when spoken to by officer); *Brooks v. State*, 76 S.W.3d 426, 429 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (subject jumped from his car and ran away when officer tried to stop him); *Reyes v. State*, 899 S.W.2d 319, 324 (Tex. App. —Houston [14th Dist.] 1995, pet. ref'd) (subject "took off running" when police asked to speak with him). Here, there is no evidence that Tanner broke into sudden, unprovoked flight in an attempt to run away from authorities or that the surrounding circumstances indicated that Tanner was exhibiting suspicious activity of any kind.

The majority points out that Tanner's Fourth Amendment rights must be weighed against the governmental interest in the prevention and detection of theft and other crime. While the threat of theft and other crime does create a governmental interest, "the gravity of the threat alone cannot be dispositive of questions concerning what means law enforcement officers may employ to

7

pursue a given purpose." *City of Indianapolis v. Edmond*, 531 U.S. 32, 42 (2000). The record does not reflect that criminal activity had recently taken place in the area, or that Tanner was in the process of burglarizing a business or intended to do so in the future. Furthermore, Tanner and his companion were pushing bicycles, rather than driving a car that could more easily conceal the fruits of criminal activity, and appear to have been empty-handed. Maldonado did not claim that he suspected Tanner of being involved in a burglary, or even that he suspected Tanner of any specific crime.[3] *See Brown v. Texas*, 443 U.S. 47, 49 (1979) (holding that reasonable suspicion was not established where officers detained subject walking in alley in high-crime area and noting that "officers did not claim to suspect appellant of any specific misconduct"). The majority insists upon intruding on Tanner's Fourth Amendment rights for the purpose of preventing a hypothetical burglary. Absent additional factors beyond the time of day and nearby closed business that would suggest that Tanner was involved in criminal activity, there was not a governmental interest strong enough to outweigh Tanner's Fourth Amendment interests.

In light of the lack of reasonable suspicion for detaining Tanner, the trial court should have granted Tanner's motion to suppress evidence obtained as a result of the detention and search. Once a suspect has been lawfully detained for investigation, the officer may conduct a limited search for weapons where it is reasonably warranted for his safety and the safety of others, even in the absence of probable cause. *Rodriguez v. State*, 975 S.W.2d 667, 675-76 (Tex. App.—Texarkana 1998, pet. ref'd). However, Tanner was unlawfully detained at the time of Maldonado's pat-down

---

[3] While Tanner had two knives of legal size clipped to his belt, Maldonado did not observe these knives until after stopping Tanner. Reasonable suspicion must be established based on the facts "available to the officer *at the moment of seizure*." *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968) (emphasis added).

search for weapons, and "evidence obtained as the fruit of an unconstitutional seizure is inadmissible." *Hernandez v. State*, 963 S.W.2d 921, 924 (Tex. App.—San Antonio 1998, pet. ref'd). Accordingly, evidence discovered as a result of the weapons search should have been deemed inadmissible, regardless of whether the search was reasonably warranted.[4]

Because Maldonado has not pointed to specific, articulable facts creating a reasonable suspicion that Tanner was involved in criminal activity, common sense would counsel us that the showing here is insufficient. As a result, I cannot join the majority in finding that the investigative detention was not a violation of Tanner's rights under the Fourth Amendment. Because I believe that the trial court erred when it denied Tanner's motion to suppress evidence, I respectfully dissent.

_____
Diane Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson

Filed: June 20, 2007

Publish

---

[4] After the pat-down search for additional weapons, Maldonado performed a second search that revealed the methamphetamine. Voluntary consent to search is a well-established exception to the requirements of both a warrant and probable cause. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). While patting down Tanner for additional weapons, Maldonado asked Tanner if he was holding additional contraband, and according to Maldonado's arrest warrant affidavit, Tanner voluntarily consented to search at this time. However, even if Tanner voluntarily consented to search, his consent was invalid because it resulted from an unlawful detention. If consent to search is given during an unlawful detention, any evidence seized is inadmissible because the validity of the consent is dependent on the validity of the detention. *Viveros v. State*, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992).