# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00217-CR

**Ryan Jeffery Tanner, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-05200343, HONORABLE JON N. WISSER, JUDGE PRESIDING

## O P I N I O N

After the trial court conducted a hearing and overruled his motion to suppress, appellant Ryan Jeffery Tanner pled guilty to the second-degree felony offense of possessing with intent to deliver more than one but fewer than four grams of methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.102(6) (West Supp. 2006), § 481.112(a), (c) (West 2003). The trial court assessed punishment at five years in prison and a $500 fine, but pursuant to a plea agreement, suspended this sentence and placed Tanner on community supervision for five years. On appeal, Tanner contends that the trial court erred in denying his motion to suppress evidence, arguing that the arresting officer lacked reasonable suspicion to stop him. We affirm the trial court's judgment.

## Factual Summary

The only evidence produced at the hearing was the testimony of the arresting officer, Henry Maldonado of the Travis County Sheriff's Office. Maldonado testified that at about 3:00 a.m.

on January 21, 2005, he was conducting a routine patrol in a "pretty excluded [sic] area" with very little ambient light coming from a gas station about one-quarter of a mile away, when he saw Tanner and a young woman pushing bicycles out from a dark area behind the Lone Star Bar. Maldonado did not see them commit any traffic violations. Although Maldonado stated in an affidavit executed immediately after the arrest that he contacted Tanner and the woman because he thought they "might need assistance due to the cold weather and time of day," he testified at the suppression hearing that he was suspicious because they were coming from behind the Lone Star Bar at 3:00 a.m., which he knew typically closed by 2:00 a.m. Maldonado admitted that he was not familiar with the bar's employees and did not know how long it took to clean the bar after closing, nor did he testify that the area had a history of burglaries, vandalism, or drug trafficking. The record does not reflect that any criminal activity had occurred in or near the bar that particular evening.

Maldonado flashed his patrol car's lights to signal for Tanner and his companion to stop. The woman, who was walking behind Tanner, stopped, but Tanner continued walking without changing his pace or direction, even after Maldonado called out to him.[1] Maldonado drove about 50 yards to Tanner, who then stopped. Maldonado observed two large knives clipped to the inside of Tanner's pants pockets. Maldonado inspected the knives and determined that they were legal and then patted Tanner down for additional weapons, finding one small knife. According to his affidavit, Maldonado asked Tanner if he had any other contraband, particularly drugs, and Tanner replied, "I don't know; you can check." Maldonado asked for permission to search Tanner's pockets, and Tanner replied, "Go ahead and take the stuff out." During his search, Maldonado found a closed

---

[1] The record does not indicate when Tanner first saw the lights or heard Maldonado.

pocketknife sheath in Tanner's left front pants pocket that had clear plastic sticking out from the inside. Maldonado opened the sheath and saw a small clear plastic bag that held ten smaller bags of methamphetamine. Maldonado testified that each bag appeared to contain the same quantity, as if the drugs were separated for delivery.

The trial court, calling the decision "a close call," denied Tanner's motion to suppress.[2] Pursuant to the plea agreement, the court suspended the five-year sentence and imposed community supervision for five years. The trial court certified Tanner's right to appeal matters that were raised by written motion and ruled on before trial.

## Standard of Review

Citizens have the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. However, if an officer has reasonable suspicion to believe that an individual is involved in criminal activity, the officer may conduct a brief investigative detention. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). The reasonableness of a temporary detention must be considered in view of the totality of the circumstances at the inception of the encounter, and the officer must be able to point to specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably suspect that a specific person had engaged in or was or soon would be engaging in criminal activity. *Garcia v. State*, 43 S.W.3d 527,

---

[2] The trial court did not make findings of fact, but stated, "I don't think there's anything inherently wrong or suspicious in walking a bike but will concede, I've walked my bike in the vicinity of lots of law enforcement officers over the decades and haven't ever been stopped. But then again, I've never walked my bike at 3:00 in the morning out from behind a darkened, closed business establishment. And I think that is . . . articulable suspicion for the encounter."

530 (Tex. Crim. App. 2001). Reasonable suspicion must be based on more than a non-specific suspicion or mere "hunch" of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The State has the burden to show that the officer had an objective basis for the stop, and the officer's subjective intent is irrelevant to the determination of reasonable suspicion. *Garcia*, 43 S.W.3d at 530. We look only at the facts known to the officer at the inception of the stop; an initially unlawful stop is not validated by the discovery of criminal activity. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

The constitutional prohibition on unreasonable searches and seizures, a "relatively simple concept[]," *United States v. Sokolow*, 490 U.S. 1, 7 (1989), guards against "arbitrary invasions solely at the unfettered discretion" of law enforcement officers. *Brown v. Texas*, 443 U.S. 47, 51 (1979). We require only a "minimal level of objective justification" on the part of the officer, Sokolow, 490 U.S. at 7 (quoting *Immigration & Naturalization Serv. v. Dalgado*, 466 U.S. 210, 217 (1984)), and our "determination of reasonable suspicion must be based upon commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). "[T]here is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.'" *Terry*, 392 US at 21 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 534-37 (1967)).

When reviewing a trial court's decision on a motion to suppress, we give almost total deference to the court's determination of historical facts but review de novo its application of the law to the facts. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). When the trial court does not make explicit findings of historical facts, we view the evidence in the light most favorable

4

to the court's ruling and assume the court made implicit findings of fact supported by the record. *Carmouche*, 10 S.W.3d at 327-28. The trial court is the sole judge of the credibility of the witnesses and their testimony. *Maxwell*, 73 S.W.3d at 281.

## Discussion

There is no question that an investigative detention occurred when Tanner stopped walking in response to Maldonado's demand.[3] Thus, the State was required to prove that Maldonado had reasonable suspicion for the detention at the time the stop began. Tanner contends that the trial court's denial of his motion to suppress violated his constitutional rights and that the police lacked reasonable suspicion for the stop.[4] To show reasonable suspicion, the State points to Maldonado's testimony that he stopped Tanner and his companion because they were walking at 3:00 a.m. from a dark area behind the bar, a business that "had been well closed by that time." He also testified that his suspicions increased when Tanner's companion stopped soon after he flashed his patrol car's lights, but Tanner continued walking until Maldonado drove up to him.

---

[3] When an officer flashes his lights, that showing of authority triggers constitutional safeguards because a reasonable person would not feel free to leave. *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989); *Hernandez v. State*, 963 S.W.2d 921, 924 (Tex. App.—San Antonio 1998, pet. ref'd). An investigative detention occurs once the individual yields to the officer's authority. *Johnson v. State*, 912 S.W.2d 227, 234 (Tex. Crim. App. 1995).

[4] Tanner also asserts that the stop violated his rights under the Texas Constitution and Texas Code of Criminal Procedure. However, he does not make separate arguments for these claims and the Texas cases he cites do not address state constitutional claims or interpret the state constitution as requiring more than the federal constitution. *See Gearing v. State*, 685 S.W.2d 326, 329 (Tex. Crim. App. 1985). Thus, we decline to address his state claims separately. *See Emery v. State*, 881 S.W.2d 702, 707 n.8 (Tex. Crim. App. 1994).

5

The reasonableness of a search "is determined 'by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests.'" *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 187-88 (2004) (quoting *Delaware v. Prouse*, 440 U.S. 648, 654 (1979)); *see also Terry*, 392 US at 20-21 (in assessing reasonableness, courts should focus on governmental interest that arguably justifies intrusion on constitutional rights). An officer may not act solely on a hunch, but his determination of "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002); *see Sokolow*, 490 U.S. at 7 (reasonable suspicion requires "minimal level of objective justification").

In conducting our review, we must heed the Supreme Court's admonitions that "the concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules,'" *Sokolow*, 490 U.S. at 7 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)), and that assigning a precise definition to reasonable suspicion "is not possible." *Ornelas v. United States*, 517 U.S. 690, 695 (1996). Our inquiry into reasonable suspicion is "multi-faceted," and determinations made in other cases "'will seldom be a useful "precedent" for another.'" *Id*. at 698 (quoting *Gates*, 462 U.S. at 238 n.11). Instead, reasonable suspicion is a "commonsense, nontechnical conception[] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id*. (quoting *Gates*, 462 U.S. at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949))). The facts are judged under "an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry*,

6

392 U.S. at 21-22. Thus, we should avoid a formulaic approach or a piecemeal comparison of similar factors in other cases, and instead consider the totality of the circumstances in *this case* and rely on commonsense inferences, asking whether it was reasonable for Maldonado to be suspicious upon seeing someone walk from behind a darkened, closed business at 3:00 a.m., in a quiet area with minimal light. In other words, we must look at the totality of the circumstances of this particular case and ask whether Maldonado was justified in drawing "inferences from and deductions about the cumulative information" available to him at the time of the stop. *See Arvizu*, 534 U.S. at 273.

When we review the trial court's determination of the historical facts for clear error only, deferring to inferences drawn from those facts by Maldonado and the trial court, *see Ornelas*, 517 U.S. at 699-700, and view the evidence in the light most favorable to the court's decision, assuming that the court made "implicit findings of fact supported in the record," *see Balentine v. State*, 71 S.W.3d 763, 768 (Tex. 2002) (citing *Carmouche*, 10 S.W.3d at 327-28), we cannot hold that the trial court erred in its application of the law to the facts. We must give due weight to the trial court's determinations that Maldanado was credible and that his inferences were reasonable. *See Ornelas*, 517 U.S. at 699; *Balentine*, 71 S.W.3d at 768. We may not re-weigh Maldonado's credibility. *See Garcia*, 43 S.W.3d at 530 (appellate courts should give "almost total deference to a trial court's . . . application of law to fact questions that turn on credibility and demeanor").

The governmental interest here is the prevention and detection of theft and other crime. Maldonado testified to the articulable factors of time, place and circumstances, and a person "of reasonable caution" could conclude that it was appropriate to briefly detain Tanner to investigate

7

the possibility of a burglary or other criminal activity. We must rely on "commonsense judgments and inferences about human behavior," *Wardlow*, 528 U.S. at 125, and remember that we are dealing with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 232 (quoting *Brinegar*, 338 U.S. at 175). When we consider the entire circumstances and attendant reasonable inferences, the facts could reasonably give rise to an inference that criminal activity might be afoot. *See Sokolow*, 490 U.S. at 7.

We recognize that one of our sister courts has held that an investigative detention must be based on more than just a person's suspicious location or the time of day because those factors focus on the suspect's surroundings rather than the suspect himself. *See Klare v. State*, 76 S.W.3d 68, 75 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).[5] However, we believe the

---

[5] The *Klare v. State* majority considered and discarded one by one the factors articulated by the arresting officer. 76 S.W.3d 68, 73-75 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (viewing time of day, whether businesses were closed, and past criminal activity independently from each other and determining that no one fact was by itself sufficient to give rise to probable cause). The majority used precisely the "divide and conquer" analysis rejected by the Supreme Court in *United States v. Arvizu. See* 534 U.S. 266, 274 (2002) ("The court's evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the 'totality of the circumstances,' as our cases have understood that phrase."). Indeed, the majority did not cite *Arvizu* at all, and the dissent noted that the majority's piecemeal approach had been rejected by *Arvizu*. 76 S.W.3d at 78 (Brister, J., dissenting).

Further, both *Klare* and *Cronin v. State*, a case from this Court with somewhat similar facts, involved vehicles seen in parking lots that were observable from public roadways. *See Cronin v. State*, No. 03-04-00266-CR, 2005 Tex. App. LEXIS 10450, at *18-19 (Tex. App.—Austin Dec. 16, 2005, no pet.) (op. on reh'g, Law, C.J., dissenting) (mem. op., not designated for publication); *Klare*, 76 S.W.3d at 71. Tanner and his companion, on the other hand, were seen walking from behind a private business, and there is nothing in the record to show that there was a public parking lot or other public access behind the bar, nor was there any showing that the area from which Tanner walked was in any way viewable from a public roadway. There is a considerable difference between an officer stopping a vehicle seen parked in a public parking lot, *see Klare*, 76 S.W.3d at 71, or a person walking late at night along a public sidewalk, *see Gamble v. State*, 8 S.W.3d 452, 453-54

*Klare* majority made two important errors in its analysis. First, the majority compared the individual facts testified to by the arresting officer to the treatment of similar facts in other cases, an approach discouraged by the Supreme Court in *Ornelas*, 517 U.S. at 698. *Klare*, 76 S.W.3d at 74-76. More importantly, the *Klare* majority focused on the circumstances of the stop piecemeal, viewing each fact independently from the others, an approach rejected in *Arvizu*, 534 U.S. at 274, and holding that neither the time of day nor the location where the vehicle initially caught the officer's eye by itself justified the stop. *Klare*, 76 S.W.3d at 73-75. If Maldonado had testified only to the lateness of the hour or to the fact that Tanner was seen walking out from behind a closed, darkened building in dimly lit area, this would have been a more difficult case. However, when the time of night and location are viewed together and common sense is applied to the totality of these circumstances, we cannot conclude that the trial court erred in finding that the stop was supported by reasonable suspicion.

**Conclusion**

Officer Maldonado made an on-the-spot observation of conduct that, by any standard, is unusual and highly consistent with criminal behavior. He observed two individuals coming out from behind a darkened place of business at 3:00 a.m. He knew the bar "had been well closed by that time." Maldonado testified that there was little ambient light in the area, rendering most of the surrounding area dark. An officer who does not have enough information upon which to base an

---

(Tex. App.—Houston [1st Dist.] 1999, no pet.), and an officer stopping someone seen walking from behind private property well after the business was closed. *See Cronin*, 2005 Tex. App. LEXIS 10450, at *15 (reasonable suspicion to stop car that drove from dark area behind restaurant that had been closed for several hours).

arrest is not required to "simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145 (1972); *see also Terry*, 392 U.S. at 23 (describing facts of stop and stating that "[i]t would have been poor police work indeed for an officer of 30 years' experience in the detection of thievery from stores in this same neighborhood to have failed to investigate this behavior further"). Had the owner of the Lone Star Bar arrived the next morning to find that his business had been robbed or vandalized, it is unlikely he would have been reassured to learn that Officer Maldonado did not stop the two people he saw walking from behind the closed bar at 3:00 a.m. The trial court in this case did not err in determining that Officer Maldonado's behavior was supported by reasonable suspicion. We overrule Tanner's sole issue on appeal and affirm the trial court's judgment.

 

 

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Henson;
  Dissenting Opinion by Justice Henson

Affirmed

Filed:  June 20, 2007

Publish