**Opinion issued September 29, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00455-CR

————————————

**DARRYL DWAYNE EVANS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 14CR1000**

---

## MEMORANDUM OPINION

A jury convicted appellant, Darryl Dwayne Evans, of possession of a

controlled substance, namely, methamphetamine in an amount of four grams or more

but less than 200 grams.[1]  Appellant pleaded true to two enhancement allegations,[2] and the jury assessed his punishment at twenty-six years' confinement in the Texas Department of Criminal Justice, Institutional Division.  In one point of error, appellant complains that the trial court erred in denying his motion to suppress evidence.  We reverse and remand.

## Background

At the pretrial suppression hearing, Officer Martinez of the Galveston Police Department testified that, while on patrol at 1 a.m. on March 30, 2014, he observed a car parked in the driveway of T&T Marine.  As Officer Martinez "was coming down Avenue G about two blocks prior, [he] saw [appellant] outside of the vehicle, then . . . walking towards the passenger side, then return back towards the driver's side."  Officer Martinez testified that, given the previous five alarm calls to the business, "there would be reasonable suspicion to wonder why [appellant] was on the property at 1:00 o'clock in the morning when the business was already closed."

Officer Martinez stated that as appellant walked around the car, "he looked at me and noticed me coming . . . then rapidly went back to the driver's seat and got in the car."  After Officer Martinez passed, appellant turned on his lights and pulled out of the driveway.  Officer Martinez then made a U-turn and, after activating his

---

[1]     *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2009).

[2]     Appellant was previously convicted of the felony offense of possession of a controlled substance in 2008 and 1999.

2

emergency lights, drove up behind appellant, who immediately pulled over. The dash cam video from the officer's car was admitted into evidence at the suppression hearing.

When Officer Martinez asked appellant why he was parked in the driveway, appellant told him that he had dropped his cell phone. Officer Martinez then detected a strong smell of marijuana coming from appellant's vehicle. After asking appellant to leave his vehicle, Officer Martinez performed a pat down search of appellant. He then searched the vehicle and discovered what appeared to be crystal methamphetamine in a plastic bag and a crack cocaine rock on the driver's seat. Officer Martinez arrested appellant at the scene. A backpack containing crystal meth, an electronic scale, and small plastic bags was later found in the trunk of appellant's vehicle.

Officer Martinez testified that there had been five 911 alarm calls to T & T Marine in the previous two weeks but he did not believe that any of those 911 calls resulted in burglary or other criminal activity. On cross-examination, Officer Martinez testified that he did not see appellant walk towards the business, away from the business, or leave the vicinity of the vehicle. He further testified that he was not on patrol in the area because of a prior history of burglaries, nor was this a high-crime area. According to Officer Martinez, he did not observe appellant commit any traffic violations or engage in any criminal activity prior to the stop.

3

After appellant's pretrial suppression motion was denied, the jury convicted him of possession of a controlled substance and, with two enhancements, assessed his punishment at twenty-six years' confinement.

## Discussion

### A. Standard of Review

We apply a bifurcated standard of review: (1) giving almost total deference to a trial court's determination of historical facts and application of law to fact questions that turn on credibility and demeanor, and (2) reviewing de novo application of law to fact questions that do not turn on credibility and demeanor. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The reviewing court views the evidence in the light most favorable to the trial court's ruling. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). At the suppression hearing, the trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).

### B. Applicable Law

An investigative detention requires a police officer to have reasonable suspicion of criminal activity. *See Matthews v. State*, 431 S.W.3d 596, 602–03 (Tex. Crim. App. 2014). A determination of reasonable suspicion requires a review of the totality of the circumstances, and reasonable suspicion may exist even if those

circumstances in isolation may be just as consistent with innocent activity as with criminal activity. *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011).

Reasonable suspicion is present if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a person actually is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a[n] [investigatory] stop, the likelihood of criminal activity need not rise to the level required for probable cause." *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 751 (2002) (citation omitted) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989)). The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968).

The State bears the burden to show that an officer had at least a reasonable suspicion the defendant either had committed an offense, or was about to do so,

before they made the warrantless stop. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *Sokolow*, 490 U.S. at 7, 109 S. Ct. at 1585).

**C.    Analysis**

We begin by determining whether the trial court's implicit findings, which led to the denial of the motion to suppress, are supported by the record. *See State v. Kerwick*, 393 S.W.3d 270 (Tex. Crim. App. 2013). Officer Martinez performed an investigatory stop based on the following articulable facts: (1) there had been five 911 alarm calls to the specific address; (2) appellant was parked in the business's driveway at 1 a.m.; (3) the business was closed; (4) upon seeing Officer Martinez's vehicle driving down the street, appellant rapidly walked from his passenger side door to his driver's side door and left the parking lot.

In *Gamble v. State*, a police officer performed an investigatory stop based on the following facts: (1) it was 3:00 a.m.; (2) the defendant was either standing in the street near, or walking in the street toward, a residence to which the officers had been frequently called in the past year, but at which they had never made an arrest for illicit activity; (3) the defendant watched the marked police car and walked away from it when it turned around; and (4) the area had a history of illicit activity. 8 S.W.3d 452, 453–54 (Tex. App.—Houston [1st Dist.] 1999, no pet.). This Court held that the trial court had erred in denying the defendant's motion to suppress

because there was insufficient evidence to support a reasonable suspicion of criminal activity. *See id.*

There are marked similarities between this case and *Gamble*. First, Officer Martinez testified that there were five 911 calls to the business over the past two weeks, similar to the calls to police regarding the residence in *Gamble*, and in both cases, no arrests resulted. *Id.* Second, the stop in this case occurred at 1:00 a.m., and the defendant in *Gamble* was stopped at 3:00 a.m. *Id.* Third, Officer Martinez testified that appellant quickly left upon seeing him, and in *Gamble*, the defendant saw the marked police car and walked away from it when it turned around. *Id.*[3] Notably, unlike *Gamble*, there is no evidence that the location in this case was considered a "high-crime" area.[4]

In *Klare v. State*, the Fourteenth Court of Appeals determined that the officer lacked reasonable suspicion to stop the truck the defendant was driving based on the following articulable facts: (1) it was 2:30 a.m.; (2) while driving on a highway, the officer saw a truck parked behind a shopping center; (3) the businesses in the

---

[3] The Court of Criminal Appeals has held that persons in an automobile are subject to temporary investigative detentions in the same manner as pedestrians. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).

[4] A "high-crime" area, although not dispositive of reasonable suspicion, is a factor to be considered when analyzing the totality of the circumstances. *See Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000) (noting that, while presence in high-crime area alone is not enough to support reasonable suspicion, fact that incident occurs in high-crime area is relevant factor to be considered in reviewing totality of circumstances).

shopping center were closed; (4) there had been burglaries at the shopping center in the past, though the police officer did not say how recent or how many; (5) the officer turned into the parking lot shortly afterwards and discovered that the truck was gone; (6) the officer then turned onto an adjoining road and within fifteen to twenty seconds came upon a truck that he believed to be the same as the one at the shopping center; and (7) the officer wanted to identify the truck. 76 S.W.3d 68, 71 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

There are several similarities between this case and *Klare*. In *Klare*, the officer testified that the above-cited reasons "raised [his] curiosity as far as suspicion goes," which the court described as an "inarticulate hunch." *Id.* at 75 (quoting *Terry*, 392 U.S. at 22, 88 S. Ct. at 1880). Similarly, Officer Martinez testified that when he saw appellant's vehicle parked in front of the business, he was "[j]ust wondering what the car was doing there at 1:00 o'clock in the morning when the business was already closed." Further, the stops in both cases occurred late at night, and the vehicles were parked near closed businesses. We also note that the defendant in *Klare* was parked behind a business which had been previously burglarized, whereas here, there were no known burglaries, only alarm calls.

In *Turner v. State*, the Dallas Court of Appeals found circumstances similar to those present in this case did not create a reasonable suspicion warranting an investigatory stop. *See* No. 05-10-01225-CR, 2011 WL 4953438, at *1–2 (Tex.

App.—Dallas Oct. 18, 2011, no pet.) (mem. op., not designated for publication). The police officer in *Turner* cited the following facts justifying the stop: (1) the stop took place at approximately 1 a.m.; (2) the defendant's car's brake lights and headlights came on when the officer turned down a street in a neighborhood; (3) the defendant then made an immediate left turn; (4) the license plate came back registered to a person residing in another city; and (5) four people occupied the vehicle. *Id.*

Finding the facts insufficient to support reasonable suspicion, the *Turner* court noted that "there is a considerable difference between an officer stopping a vehicle seen parked in a public parking lot . . . and an officer stopping someone seen walking from behind private property well after the business was closed." *Id.* at *3 (quoting *Tanner v. State*, 228 S.W.3d 852, n.5 (Tex. App.—Austin 2007, no pet.) (citations omitted)).[5] Here, the dash cam video shows that appellant was parked in the well-lit driveway of T&T Marine, and Officer Martinez testified he did not see appellant leave the vicinity of his vehicle before he turned on his headlights and began to drive away. The *Turner* court also noted that the police officer did not provide any evidence that appellant was fleeing the scene. *See Turner*, 2011 WL 4953438, at *4

---

[5] In *Turner v State*, the defendant was parked on a neighborhood street, which the court found "more akin to being parked in a public parking lot." 05-10-01225-CR, 2011 WL 4953438, at *3 (Tex. App.—Dallas Oct. 18, 2011, no pet.) (mem. op., not designated for publication).

(stating that officer "did not testify [the defendant] spun out his tires in an effort to leave or that he sped away"). Similarly, Officer Martinez did not testify that appellant quickly drove away; rather, he stated that appellant "rapidly went back to the driver's seat, got in the car. And as I passed him, his lights came on; and he pulled out of the driveway."

Finally, in *Jones v. State*, this Court held that the trial court could have reasonably concluded that the officer had reasonable suspicion to stop the defendant based on (1) the lateness of the hour; (2) the vehicle was parked outside a closed business; (3) the high incidence of crime in the vicinity; and (4) the defendant's attempt to flee as the police officer parked his car nearby and approached the car on foot. *See* No. 01-07-00240-CR, 2008 WL 746527, at *3 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (mem. op., not designated for publication). The Court stated that although flight alone may not justify a stop, it does constitute a valid factor in determining whether an officer had reasonable suspicion to detain an individual. *See id*. at *3. Here, there is no evidence that appellant attempted to flee as did the defendant in *Jones*, nor was he stopped in a high-crime area.

Based on our review of the record and relevant case law, we cannot conclude that Officer Martinez had reasonable suspicion, based on the totality of the circumstances, to believe that appellant had engaged, or was about to engage, in

criminal activity.  Therefore, we hold that the trial court erred in denying appellant's motion to suppress.  We sustain appellant's point of error.

## Conclusion

We reverse the judgment of the trial court and remand this case for proceedings consistent with this opinion.


Russell Lloyd
Justice


Panel consists of Justices Bland, Massengale, and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).