**Opinion issued July 1, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

### NO. 01-13-00451-CR

———————————

**PETER FILS JOLIVETTE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1360299**

---

## MEMORANDUM OPINION

Peter Fils Jolivette pleaded guilty to possession of less than one gram of a controlled substance, and the trial court assessed punishment at 60 days'

confinement.[1] In one issue, Jolivette contends that the trial court erred by denying his motion to suppress evidence seized during an illegal investigative detention. We affirm.

## Background

Well after midnight, Officer J. Guzman and D. Hudeck were patrolling a residential neighborhood and decided to drive by a vacant lot known for narcotics and prostitution activity. The officers approached the lot in a marked police car. As they neared the lot, they saw Jolivette's vehicle parked in the middle of the street with the headlights off and a man standing next to the car talking to Jolivette through the driver's window.

Guzman testified that when he shined the police car spotlight onto the man talking to Jolivette, the man immediately walked away from the vehicle, toward a wooded area of the vacant lot. Guzman described the man's behavior as "suspicious." Then, Guzman shined the spotlight onto the driver's side of the vehicle. Jolivette responded quickly, making movements "towards the floorboard area" beneath his seat, "like [he was] trying to conceal something, hide something." Guzman parked the patrol car and Hudeck walked toward the man

---

[1] TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a)–(b), 481.102(3)(D) (West 2010) (criminalizing possession of less than one gram of cocaine as state jail felony).

who had been standing next to the vehicle. Guzman approached the driver's side of the vehicle and found Jolivette sitting in the driver's seat.

Guzman testified that he asked Jolivette to get out of the vehicle "for safety reasons" and then patted Jolivette down to "make sure he didn't have nothing on him." Guzman did not find any weapons in his search. While Jolivette stood next to the car, Guzman used a flashlight to look through the open driver's window toward the floorboard and saw three items: a crack pipe and two rocks of crack cocaine. After a field test confirmed that the rocks were cocaine, Guzman arrested Jolivette.

Jolivette was charged with possession of less than one gram of a controlled substance. At a pretrial hearing, Jolivette moved to suppress the evidence, arguing that the pipe and cocaine were inadmissible because Guzman did not have reasonable suspicion to justify his investigative detention. Officers Hudeck and Guzman were the only witnesses to testify.

After hearing the evidence, the trial court made the following findings of fact:

- Officers Guzman and Hudeck exercised discretion based on their experience and training when patrolling locations known for high narcotics and prostitution activity and the officers had made "several" prior narcotics-related arrests at the same location and many had been tried in criminal court.

- Jolivette's vehicle was "stopped in the middle of the street" without headlights at 2:46 a.m.

3

- The officers' spotlight was "bright" and the officers could see through the windshield of Jolivette's car from approximately 40 yards.

- Jolivette's "whole body" moved towards the floorboard of the vehicle when illuminated by the police spotlight.

- The man standing next to Jolivette's vehicle walked away, toward the vacant lot when the police officers arrived.

- Based on the officers' training and experience, it was a "reasonable possibility" that there was a narcotics transaction in progress when they arrived at the scene.

- Officer Guzman asked Jolivette to exit the vehicle for "safety reasons" and then Jolivette closed the car door.

- Officer Guzman saw a crack pipe and two rocks of cocaine on the driver's side floorboard of Jolivette's car.

The trial court also made the following conclusions of law: the officers had lawful authority to approach Jolivette's car because the vehicle was obstructing the roadway and had its headlights off. Citing *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005), the court also concluded that the officers had reasonable suspicion to conduct an investigative detention because of the officers' experience and training, their familiarity with the area's reputation for criminal narcotics activity, the time of night, Jolivette's "obvious bodily movement toward the floorboard," and the other man's fleeing from the vehicle when the officers arrived.

The trial court denied the motion to suppress and Jolivette pleaded guilty to the charge. Jolivette was sentenced to 60 days' confinement.

Jolivette timely appealed.

## Motion to Suppress

In his sole issue, Jolivette contends that there was no reasonable suspicion to warrant his investigative detention and, therefore, the evidence obtained from his car was inadmissible.

### A. Standard of review

When a defendant challenges a trial court's denial of a motion to suppress evidence, courts of appeals review the trial court's ruling for an abuse of discretion. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *Ervin v. State*, 333 S.W.3d 187, 202 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). We grant almost total deference to a trial court's determinations of historical facts. *Turrubiate*, 399 S.W.3d at 150; *Ervin*, 333 S.W.3d at 202. We apply the same deferential standard for mixed questions of law and fact that require evaluation of credibility and demeanor. *Turrubiate*, 399 S.W.3d at 150; *Ervin*, 333 S.W.3d at 202. However, we review de novo all other mixed questions of law and fact. *Turrubiate*, 399 S.W.3d at 150; *Ervin*, 333 S.W.3d at 202. We imply all necessary findings of fact that are supported by the record. *Turrubiate*, 399 S.W.3d at 150. We must uphold the trial court's ruling if it is reasonably supported by the

record and is correct under any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).

When a defendant alleges evidence is inadmissible because it was collected during an illegal detention, we review de novo the trial court's determination of whether reasonable suspicion existed to conduct the detention. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997); *Klare v. State*, 76 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

**B.      The totality of the circumstances test**

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures, and this limitation is implicated by a police officer's detention of a motorist for the purposes of an investigative detention. U.S. CONST. amend. IV; *see, e.g.*, *Arizona v. Johnson*, 555 U.S. 323, 326–27, 129 S. Ct. 781, 784 (2009); *Garcia v. State*, 827 S.W.2d 937, 943–44 (Tex. Crim. App. 1992). Police officers' interactions with citizens can be divided into three categories: encounters, investigative detentions, and arrests. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010); *see also Terry v. Ohio*, 392 U.S. 1, 19 & n.16, 88 S. Ct. 1868, 1879 & n.16 (1968). An encounter is any interaction that a citizen may freely terminate at any time. *See Crain*, 315 S.W.3d at 49. Police interaction with a citizen is no longer an encounter if the officer's words or actions would communicate to a reasonable person that he is not free to leave or refuse the

officer's requests. *See, e.g.*, *Pennywell v. State*, 127 S.W.3d 149, 152 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding police officer questioning defendant in back seat of patrol car constituted investigative detention). "An investigative detention occurs when a law enforcement officer confronts an individual, who then yields to a display of authority and is temporarily detained without a warrant." *Id*. at 153. When a police officer reasonably suspects that a person is involved in criminal activity, an investigative detention is permissible. *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *see Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002) ("A seizure [of a person] based on reasonable suspicion . . . will generally be reasonable.").

"Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational interferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford*, 158 S.W.3d at 492. Courts review the totality of the circumstances when determining whether a police officer has reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 8, 109 S. Ct. 1581, 1585 (1989); *Ford,* 158 S.W.3d at 492–93; *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *see Derichsweiler v. State*, 348 S.W.3d 906, 909–10, 917 (Tex. Crim. App. 2011) (holding officers had reasonable suspicion to detain and arrest driver for DWI when he exhibited "bizarre" behavior by driving closely to

other vehicles and was observed "grinning and staring" at other drivers). Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; *United States v. Martinez-Fuerte*, 428 U.S. 543, 560–61, 96 S. Ct. 3074, 3085 (1976) ("[S]ome quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure."). We judge the reasonableness of a police officer's actions from the perspective of a reasonable officer at the scene—rather than with the advantage of hindsight. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997).

Jolivette relies on *Gamble v. State*, 8 S.W.3d 452 (Tex. App.—Houston [1st Dist.] 1999, no pet.) and *Hawkins v. State*, 853 S.W.2d 598 (Tex. App.—Amarillo 1993) to support his contention that "the facts that form the basis of [his] detention could be used to investigate any resident who lives in a high crime area" and, therefore, the officers lacked reasonable suspicion to detain him.[2]

---

[2] Because the State concedes that there was an investigative detention following Officer Guzman's pat-down of Jolivette, we consider the totality of the circumstances leading up to the pat-down in determining whether the officers had reasonable suspicion to detain him. *Compare Johnson v. State*, 414 S.W.3d 184, 192–94 (Tex. Crim. App. 2013) (holding defendant subject to investigative detention when officer partially blocked-in defendant's vehicle with patrol car, shined spotlight on defendant's car, and approached defendant's asking "What's going on, what are you doing out here?"), *and Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010) (holding officer conducted investigative detention when he shined patrol car overhead lights at defendant and ordered defendant to "come over here and talk to me"), *with Ashton v. State*, 931 S.W.2d 5, 7 (Tex. App.—Houston [1st Dist.] 1996, writ ref'd) (holding no investigative detention when officer approached defendant's parked car in public place and asked defendant to roll down her window).

In *Hawkins*, the court of appeals held that the police did not have reasonable suspicion to detain the defendant, even though the police were familiar with his past criminal record and he was parked in an area "known for [street-level] drug trafficking," because there were no outstanding warrants for his arrest and no reports of drug-dealing in the area on the night of his detention *Hawkins*, 853 S.W.2d at 602. The court concluded that the defendant's actions "were as consistent with innocent activity as with criminal activity" and did not give rise to reasonable suspicion to detain the defendant. *Id*.

The Court of Criminal Appeals has since rejected the analysis applied in *Hawkins* and now reviews the reasonableness of a detention in terms of totality of the circumstances. *Woods*, 956 S.W.2d at 38–39; *see also Dixon v. State*, 187 S.W.3d 767, 769–70 (Tex. App.—Amarillo 2006, no pet.) (rejecting *Hawkins* analysis and stating that "the circumstances before the officer may be as consistent with innocent activity as with criminal activity is of no moment"). An investigative detention is justified "when the detaining officer has specific articulable facts, which taken together with rational interferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity." *Woods*, 956 S.W.2d at 38–39; *Canales v. State*, 221 S.W.3d 194, 198–99 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (applying *Woods*). The Court reasoned that certain conduct, "when viewed in a vacuum, [may]

appear[] purely innocent," but, when viewed in terms of the totality of the circumstances, may give rise to reasonable suspicion. *Woods*, 956 S.W.2d at 38.

In *Gamble*, the court applied the *Woods* analysis and determined that the totality of the circumstances did not give rise to a reasonable suspicion to detain the defendant. *Gamble*, 8 S.W.3d at 454. Specifically, the police officer did not have reasonable suspicion to conduct an investigative detention based on his observation of the defendant walking up to a house located in an area with a reputation for high crime and "turning around to watch their patrol car." *Id*. at 453. The court determined that factors like time of day and prevalence of criminal activity—by themselves—do not give rise to a reasonable suspicion to detain a suspect. *Id.* However, they may be considered as part of the totality of the circumstances. *See Klare*, 76 S.W.3d at 74 (noting that "time of day is not suspicious in and of itself" and "the fact that a given locale is well-known for criminal activity will not itself justify [an investigative detention] but it is among the various factors that officers may take into account."); *see also Brown v. Texas*, 443 U.S. 47, 53, 99 S. Ct. 2637, 2641 (1979) (holding nighttime not per se sufficient to give rise to reasonable suspicion).

In *King v. State*, 35 S.W.3d 740 (Tex. App.—Houston [1st Dist.] 2000, no pet.), the court of appeals held that the police had reasonable suspicion to detain a defendant who was blocking a moving lane of traffic in the middle of the street. *Id.*

at 742. The police officer was patrolling a neighborhood known for criminal activity in which he had made prior arrests. *Id*. at 743. Based on this knowledge, when he saw the parked car with several men standing around it and the people ran away as he approached in his marked police car, the officer suspected that a drug deal was "in progress." *Id.* at 742. The officer "knew from experience" that this behavior was consistent with a drug transaction. *Id.* Therefore, the court held that he was justified in asking the defendant to exit the vehicle for questioning. *Id.* at 743–44. When the defendant exited his vehicle, the officer seized a small film canister filled with marijuana. *Id.* at 744–45. The court concluded that the trial court properly determined that the officer had reasonable suspicion to detain the defendant and that he was justified in also seizing the film canister. *Id.* at 746.

A person's nervous conduct may also support a trial court's conclusion that a police officer has reasonable suspicion to conduct an investigative detention. *Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002). The Court determined that nervous, evasive behavior constituted "specific, articulable facts" which, based upon the totality of the circumstances, supported the officer's reasonable suspicion to detain the defendant. *Id.* (noting that defendant "appeared to be nervous, and was constantly looking over his shoulder" in officer's direction while walking away from scene of shooting (citation omitted)). In addition to nervous behavior, a person's furtive movements can be a factor when determining

whether an officer had reasonable suspicion. *See Kelly v. State*, 331 S.W.3d 541, 549–50 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("[N]ervous behavior and furtive movements may constitute factors in determining reasonable suspicion."); *Zone v. State*, 84 S.W.3d 733, 738–39 (Tex. App.—Houston [1st Dist.] 2002), *aff'd*, 118 S.W.3d 776 (Tex. Crim. App. 2003) (holding furtive movements are factor in determining reasonable suspicion).

Finally, a police officer may temporarily detain a person for investigative purposes if he reasonably suspects that the person has committed a traffic violation. *Klare*, 76 S.W.3d at 75; *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010); *see Johnson*, 555 U.S. at 326–27, 129 S. Ct. at 784 (outlining conditions warranting "stop and frisk" search of vehicle and occupants because motorist following traffic violation); *see also Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982) ("It is well settled that a traffic violation committed in an officer's presence authorizes an initial stop."); *see, e.g.*, *Hamilton v. State*, 831 S.W.2d 326, 330–31 (Tex. Crim. App. 1992) (noting that police had reasonable suspicion because defendant drove on wrong side of road).

In *Valencia v. State*, 820 S.W.2d 397 (Tex. App.—Houston [14th Dist.] 1991, writ ref'd), the combination of a high-crime area and a traffic offense supported the court of appeal's conclusion that the trial court did not err in overruling the defendant's motion to suppress evidence. *Id.* at 400. The police

officers had detained the defendant for a possible traffic violation in a "residential neighborhood that was known for its very high crime and its high narcotics trafficking." *Id*. When the officers first approached the van, it was blocking a street; however, as the officers' patrol car drove closer, the van drove away, "swerving from one side of the street to the other." *Id*. at 398–99. As one of the officers approached the vehicle, he observed that the driver appeared to be intoxicated and that one of the passengers "continually" moved his hands, despite the officer's instructions to keep his hands in sight. *Id*. at 399. The court held that the trial court properly determined that the officer was justified in conducting a "brief" investigative detention when the defendant appeared to commit various traffic offenses in an area known for very high crime and narcotics trafficking and the officer observed the vehicle occupants' "suspicious activity." *Id.* at 400.

## C.  Application of the totality of the circumstances test

The totality of the circumstances here includes a number of factors that support the officer's reasonable suspicion to conduct an investigative detention. First, based on their training and experience in patrolling locations known for high narcotics and prostitution activity, both officers testified that it was uncommon for residents to be socializing so late at night. *See Valencia*, 820 S.W.2d at 400; *see also King*, 35 S.W.3d at 743. Second, the location of the interaction supports the conclusion that the totality of the circumstances gave rise to the police officer's

13

reasonable suspicion. Both of the police officers had made several prior arrests for narcotics-related activity at the same location where Jolivette was parked and testified that the men's behavior was consistent with narcotics-related transactions. *See State v. Castleberry*, 332 S.W.3d 460, 469 (Tex. Crim. App. 2011) (holding investigative detention was justified based on officer's testimony of specific facts that suspect actually is, has been, or will be involved in criminal activity).

Third, the men exhibited nervous, suspicious behavior. When Officer Guzman shined the patrol car spotlight onto Jolivette's car, the officers saw Jolivette make "obvious, suspicious" movements toward the floorboard area beneath his seat, as if Jolivette were "trying to conceal something, hide something." *See Castleberry*, 332 S.W.3d at 469 (holding officer had reasonable suspicion to detain defendant when defendant's movement could be reasonably construed as reaching for weapon). At the same time, the man talking to Jolivette walked away from the car toward a wooded area of the vacant lot. *See, e.g.*, *King*, 35 S.W.3d at 743 (running away from vehicle illegally parked in street justified police officer's reasonable suspicion of narcotics-related activity). Lastly, Officer Guzman testified that when he approached the car, Jolivette appeared nervous. *See Balentine*, 71 S.W.3d at 769 (holding investigative detention was reasonable based in part on defendant's "nervous" behavior); *cf. Valencia*, 820 S.W.2d at 399 (noting officer may "conduct a brief investigative detention . . . based upon his

observations of suspicious activity by the occupants of the vehicle before and after the stop").

Finally, the officers could have reasonably concluded Jolivette was violating traffic laws by being parked in the middle of the street, failing to use his headlights, and obstructing the roadway.[3] *See* TEX. PENAL CODE ANN. § 42.03(a)(1) (West 2011) (criminalizing obstruction of street with vehicle); TEX. TRANSP. CODE ANN. § 547.302(a)(1) (West 2010) (requiring operation of vehicle headlights at nighttime); *see* TEX. TRANSP. CODE ANN. § 541.451 (defining nighttime as beginning one-half hour after sunset and ending one-half hour before sunrise). This traffic violation conducted in Guzman's presence also supports Guzman's reasonable suspicion to conduct an investigative detention. *Armitage*, 637 S.W.2d at 939.

Based on the totality of these circumstances, Officer Guzman testified to specific, articulable facts giving rise to a reasonable suspicion to detain Jolivette. *See Terry*, 392 U.S. at 27, 88 S. Ct. at 1883 (noting reasonable suspicion requires

---

[3] Jolivette contends that there is conflicting evidence to support whether the car's engine was running when the police arrived at the scene and whether it was a violation to park without operating the headlights. We defer to the trial court's determinations regarding the weight of the evidence and hold there was sufficient evidence upon which the trial court could have relied in determining the Jolivette's car engine was running and that the car was subject to traffic laws governing the operation of vehicles at nighttime. *See Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013) (noting reviewing courts defer to trial court's findings of fact and determinations regarding witness credibility). Regardless, there was other sufficient evidence for the trial court to conclude that Officer Guzman had reasonable suspicion to detain Jolivette.

15

more than an unarticulated suspicion or "hunch" (citation omitted)). We conclude, therefore, that the trial court did not abuse its discretion in denying the motion to suppress.

## Conclusion

Having overruled Jolivette's sole issue, we affirm.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).