ACCEPTED
03-15-00079-CR
4926422
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/17/2015 8:34:53 AM
JEFFREY D. KYLE
CLERK

**No. 03-15-00079-CR**

**IN THE**

**THIRD COURT OF APPEALS**

**at AUSTIN**

**DAVID KENT THACKER, JR.**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/17/2015 8:34:53 AM
JEFFREY D. KYLE
Clerk

**VS.**

**STATE OF TEXAS**

**Appellee**

**Appealed from the 207th District Court of
Comal County, Texas, Trial Court Case No. CR2013-096**

_____

_____

**Gerald C. Moton**
**Texas Bar No. 14596350**
**11765 West Avenue, PMB 248**
**AUSTIN, TX 78216**
**Telephone (210) 410-8153**
**Fax (210) 568-4389**
**motongerald32@gmail.com**

**Oral Argument  Requested**

No. 03-15-00079-CR

IN THE

THIRD COURT OF APPEALS

at AUSTIN

DAVID KENT THACKER, JR.,


VS.


STATE OF TEXAS

Appellee


Appealed from the 207th District Court of
Comal County, Texas, Trial Court Case No. CR2013-096

---

## **IDENTITY OF PARTIES & COUNSEL**

David Kent Thacker, Jr. certifies that the following is a complete list of the

parties, attorneys and any other person who has any interest in the outcome of this

lawsuit:

David Kent Thacker, Jr., Thacker, Last Known Address: 3005 W. San Antonio
Street, New Braunfels, Texas 78130, telephone number: (830) 620-3400; fax
number: (830) 608-2082.

Gerald C. Moton, Moton Law Office, PMB 248, San Antonio, Texas 78216, Trial
Attorney, telephone number: (210) 410-8153, fax number: (210) 568-4389.

Sammy McCrary, Chief Felony Prosecutor for Appellee, Criminal District Attorney
of Comal County, Texas, 150 N. Seguin Avenue, Ste 307, New Braunfels, TX
78130-5122, telephone number: (830) 221-1300; fax number: (830) 620-5599.

Daniel Palmitier, Assistant Attorney for Appellee, Criminal District Attorney of Comal County, Texas, 150 N. Seguin Avenue, Ste 307, New Braunfels, TX 78130-5122, telephone number: (830) 221-1300; fax number: (830) 620-5599.

Jacqueline H. Doyer, Assistant Attorney for Appellee, Criminal District Attorney of Comal County, Texas, 150 N. Seguin Avenue, Ste 307, New Braunfels, TX 78130-5122, telephone number: (830) 221-1300; fax number: (830) 620-5599.

Jennifer Anne Owens Thrap, Attorney for Appellee, Criminal District Attorney of Comal County, Texas, 150 N. Seguin Avenue, Ste 307, New Braunfels, TX 78130-5122, telephone number: (830) 221-1300; fax number: (830) 620-5599.

Lisa C. McMinn, State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711, telephone number: (512) 463-1660; Fax number: (512) 463-5724.

Honorable Bruce Boyer, Judge 22nd Judicial District, Trial Judge, 150 N. Seguin, Suite 317, New Braunfels, TX 78130, (830) 221-1270, Fax: (830) 608-2030.

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES & COUNSEL.................................................... i

TABLE OF CONTENTS…................................................................ iii

INDEX OF AUTHORITIES............................................……….............. vi

STATEMENT OF THE CASE............................................................... 2

A. Nature of the Case…................................................................ 2

B. Course of Proceeding................................................................ 2

C.  Trial Court's Disposition of the Case ....................................... 4

STATEMENT REGARDING ORAL ARGUMENT.............................. 5

ISSUES PRESENTED FOR REVIEW....................................... 6

STATEMENT OF THE FACTS........................................……........ 7

A. Officer Jason Tucker..............................................……........... 7

B. Officer Terry Flugrath............................................……........... 10

SUMMARY OF THE ARGUMENT...................................... 12

ARGUMENT...............................................………................... 14

       POINT OF ERROR NO. ONE

       THE TRIAL COURT ERRED IN FAILING TO GRANT THACKER'S MOTION TO SUPPRESS   ANY AND ALL EVIDENCE STEMMING FROM HIS DETENTION WHICH WAS MADE WITHOUT A WARRANT  AS THE OFFICER

　DID NOT HAVE AN OBJECTIVE BASIS

FOR THE DETENTION.................................................................. 14

A.　Standard of Review................................................................ 14

B.　Applicable Law...................................................................... 15

C.　Care-taking Function Did Not Justify Continued Traffic Stop
Investigation....................................................................……....... 17

D.　Analysis.................................................................................. 19

POINT OF ERROR NO. TWO

THE TRIAL COURT ERRED IN FAILING TO
GRANT THACKER'S MOTION TO SUPPRESS
ORAL STATEMENTS AS THEY WERE CUSTODIAL
INTERROGATIONS THAT VIOLATED THE LAW................. 21

A.　Standard of Review................................................................ 21

B.　Custodial Interrogation.......................................................... 22

POINT OF ERROR NO.THREE
WHETHER THE EVIDENCE WAS LEGALLY
INSUFFICIENT TO CONVICT THACKER OF
"OPERATING" A MOTOR VEHICLE.................................... 24

POINT OF ERROR NO. FOUR

THE EVIDENCE WAS LEGALLY INSUFFICIENT
TO CONVICT THACKER OF OPERATING A
MOTOR VEHICLE IN A "PUBLIC PLACE"........................... 29

POINT OF ERROR NO. FIVE

THE EVIDENCE WAS LEGALLY INSUFFICIENT TO
CONVICT THACKER OF OPERATING A MOTOR
VEHICLE WITHOUT NORMAL USE OF FACILITIES......... 32

iv

POINT OF ERROR NO. SIX

    WHETHER THACKER'S LIFE SENTENCE WAS CRUEL
AND UNUSAL PUNISHMENT....................................... 34

PRAYER ................................................................………..... 36

CERTIFICATE OF SERVICE............................................... 37

CERTIFICATE OF COMPLIANCE....................................... 38

# INDEX OF AUTHORITIES

**PAGE**

**CASES**

*Tamez v. State,*
    11 S.W. 3d 198 (Tex.Crim.App. 2000)........................................... 3

*Robles v. State,*
    85 S.W.2d 211, 212 (Tex. Crim. App. 2002)............................... 4

*Miranda v. Arizona,*
    384 U.S. 436, 479 (1966)................................................................. 12, 21
    24

*Guzman v. State,*
    955 S.W.2d 85, 89 (Tex. Crim. App. 1997)............................... 14, 20
    21

*Ornelas v. United States,*
    517 U.S. 690, 699(1996)................................................................. 14

*State v. Mendoza,*
    365 S.W.3d. 666, 670 (Tex. Crim. App. 2012)......................... 15

*State v. Castleberry,*
    332 S.W.3d 460, 465 (Tex. Crim. App. 2011)......................... 15, 17

*State v. Sheppard,*
    271 S.W. 3d 281, 288 (Tex. Crim. App. 2008).......................... 15

*Amador v. State,*
    221 S.W. 3D 666, 672 (2007)....................................................... 15

*Terry v. Ohio,*
    392 U.S. 1, 28 (1968)..................................................................... 16, 22

*Derichsweiler v. State,*
    348 S.W.3d 906, 914 (Tex. Crim. App. 2011)............................ 16

*Hiibel v. Sixth Judicial Dist. Court,*
    542 U.S. 177, 185 (2004)........................................................ 16

*York v. State,*
    342 S.W.3d 528, 536 (Tex. Crim. App. 2011)............................ 16, 17
        20

*Martinez v. State,*
    348 S.W.3d 919, 923 (Tex. Crim. App. 2011)............................ 16

*United States v. Arvizu,*
    534 U.S. 266, 274 (2002)...................................................... 16

*Gamble v. State,*
    8 S.W.3d 452, 454
    (Tex. App.-Houston [1st Dist.] 1999, no pet.)........................... 17, 20

*Mincey v. Arizona,*
    437 U.S. 385, 390 (1978)...................................................... 17

*Cady v. Dombrowski,*
    413 U.S. 433 (1973)............................................................. 17,18

*Wright v. State,*
    7 S.W.3d 148,151 (Tex. Crim.App.1999)................................. 18, 19

*Corbin v. State,*
    85 S.W.3d 272, 277 (Tex. Crim.App.2002)............................... 18

*Gonzales v. State,*
    369 S.W.3d 851, 855 ftn 18 (Tex.Cr.App. 2012) ...................... 19

*Dowthitt v. State,*
    931 S.W.2d 244, 263 (Tex.Crim.App. 1996)............................ 21, 23

*Ripkowski v. State,*
    61 S.W/3d 378, 381-52 (Tex.Crim.App. 2001)......................... 21

*Riley v. United States*,
    923 A.2d 868, 883-84 (D.C.App. 2007),
    *cert. denied*, 555 U.S. 830, (2008)............................................ 22

 *Abernathy v. State*,
    963 S.W.2d 822, 824 n. 4
    (Tex.App.-San Antonio 1998, pet. ref'd). .................................. 22

*Berkemer v. McCarty,*
    468 U.S. 420, 439 (1984)................................................... 22, 23

*California v. Beheler*,
    463 U.S. 1121, 1125 (1983)...................................................... 23

*Stansbury v. California,*
    511 U.S. 318, 324 (1994).......................................................... 24

*Jackson v. Virginia*,
    443  U.S. 307, 319(1979).......................................................... 25

*Anderson v. State*,
    416 S.W.3d 884, 888  (Tex. Crim. App. 2013).......................... 25

*Brooks v. State*,
    323 S.W.3d 893, 899 (Tex. Crim. App. 2010).......................... 25

*Carrizales v. State*,
    414 S.W. 3d 737, 742 (Tex. Crim. App. 2013).......................... 25

 *Hooper v. State*,
    214 S.W. 3d 9, 13  (Tex. Crim. App. 2007). ............................ 25

*Wicker  v. State*,
    667 S.W.2d 137, 143  (Tex. Crim. App. 1984).......................... 25

*Matson v. State*,
    819 S.W.2d. 830, 846  (Tex. Crim. App.1991).......................... 25

*Fuentes v. State*,
    991 S.W.2d 267, 271 (Tex. Crim. App. 1999)........................... 25

*Sharp v. State*,
707 S.W2d 611, 614 (Tex. Crim. App. 1986)...............................   26

*Turro v. State*,
867 S.W.2d 43,47 (Tex. Crim. App. 1993)..................................   26

*McDuff v. State*,
939 S.W.2d 607, 614 (Tex. Crim. App. 1997)............................   26

*Kirsch v. State*,
357 S.W.3d 645, 650-51 (Tex. Crim. App. 2012).......................   26

*Denton v. State*,
911 S.W.2d 388, 389 (Tex. Crim. App. 1995).............................   26

*Barton v. State*,
882 S.W.2d 456 (Tex. App.—Dallas 1994, no pet.).....................   27, 28

*Dornbusch v. State*,
262 S.W.3d 432 (Tex. App.—Fort Worth 2008, no pet.)..............   28

*Reynolds v. State*,
744 S.W.2d 156 (Tex. App.—Amarillo 1987, pet. ref'd) ............   28

*Pope v. State*,
802 S.W.2d 418 (Tex. App.—Austin 1991, no pet.).....................   28

*Hernandez v. State*,
773 S.W.2d 761 (Tex. App.—San Antonio 1989, no pet.)...........   28

*Hearne v. State*,
80 S.W.3d 677
(Tex. App.—Houston [1st Dist.] 2002, no pet.)...........................   28

*Shaub v. State*,
99 S.W.3d 253, 256
(Tex.App.-Fort Worth 2003, no pet.)..........................................   29

*Loera v. State*,
14 S.W.3d 464, 467 (Tex.App.-Dallas 2000, no pet.)............... 30, 31
32

*State v. Nailor*,
949 S.W.2d 357
(Tex.App.-San Antonio 1997, no pet.)…….............................. 30, 31
32

*Holloman v. State,*
No. 11-95-275-CR, 1995 WL 17212433
(Tex.App.—Eastland 1995)…….......................................... 30

*In re W.T.O.,*
No. 03-01-00630-CV,
2002 Tex. App. LEXIS 8214, at *7
(Austin Nov. 21, 2002, no pet. h.)...................................... 30

*Kapuscinski v. State*,
878 S.W.2d 248, 250
(Tex.App.-San Antonio 1994, pet. ref'd).................................... 30

*Thibaut v. State*,
782 S.W.2d 307, 309,
(Tex.App.-Eastland 1989, no pet.) ............................................. 30

*Cornealius v. State,*
900 S.W.2d 731, 734 (Tex.Crim.App. 1995)........................... 31

*Commander v. State*,
748 S.W.2d 270
(Tex. App.-Houston [14th Dist.] 1988, no writ)...................... 31

*Fowler v. State*,
65 S.W.3d 116 (Tex.App.—Amarillo 2001, no pet.)............... 32

*Findlay v. State*,
9 S.W.3d 397, 400
(Tex.App.-Houston [14th Dist.] 1999).................................... 32

*Stoutner v. State,*
    36 S.W.3d 716, 721
      (Tex.App.-Houston [1st Dist.]2001, pet. ref'd)........................ 33, 34

*Weave*r v. State,
    721 S.W.2d 495, 498
     (Tex.App.-Houston [1st Dist.] 1986, pet. ref'd)....................... 33, 34

*Scillitani v. State,*
    297 S.W.3d 498
     (Tex.App.-Houston [14th Dist.] 2009).................................... 33

*Graham v. Florida,*
    560 U.S. 48, 59-60  (2010)......................................................... 34

*Ewing v. California,*
    538 U.S. 11  (2003)................................................................. 34

*Harmelin v.Michigan,*
    501 U.S. 957 (1991)................................................................. 34

*Solem v. Helm,*
    463 U.S. 277 (1983)................................................................. 34

*Rummel v.Estelle,*
    445  U.S. 263 (1980)................................................................ 34, 35

*Winchester v. State,*
    246 S.W.3d 386, 390-91
     (Tex. App.-Amarillo 2008, pet. ref'd) ...................................... 35

*Vrba v. State,*
    69 S.W. 3D 713, 716, 724-725 …............................................... 35

*Davidson v. State,*
    03-13-00708-CR
    (Tex.App.-Austin 8-1-2014)(unpublished)................................... 35

*Harris v. State,*
   204 S.W.3d 19, 29
      (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd)........................ 35

*Hicks v. State,*
   15 S.W.3d 626, 632
      (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)........................ 35

*Nunn v. State*, 14-14-00704-CR
   (Tex.App.-Houston [14th Dist.] 4-9-2015) (unpublished).....…........ 35

## UNITED STATES CONSTITUTION

Fourth Amendment  to the United States Constitution......................... 15, 16
                                                                          17, 18
United States Constitution................................................... 15,17

Fifth Amendment  to the United States Constitution............................ 22

U.S. Const. amend VIII........................................................ 34

## FEDERAL STATUTES

None

## TEXAS CONSTITUTION

None

## STATE STATUES

Tex. Pen. Code  § 49.04....................................................... 22, 32

Tex. Pen. Code  Ann § 49.04(a)(West Supp. 2013)............................... 26

Tex. Pen. Code  Ann § 49.01(2)(West Supp. 2013)............................... 26

Tex. Pen. Code  Ann § 1.07(a)(40)............................................. 29

## STATE RULES

Tex.R.App. P. 9.4(e)............................................................... 38

Tex.R.App. P. 9.4(i)............................................................... 38

Tex.R.App. P. 9.4(i)(1)........................................................... 38

## MISCELLANEOUS

Black's Law Dictionary 13 (7th ed. 1999)..................................... 31

*Senate Criminal Justice Comm., Bill Analysis*,
  Tex. S.B. 35, 75 th Leg., R.S. (1997)........................................ 33

**No. 03-15-00079-CR**

IN THE

THIRD COURT OF APPEALS

at AUSTIN

DAVID KENT THACKER, JR.,

VS.

STATE OF TEXAS

Appellee

Appealed from the 207th District Court of
Comal County, Texas, Trial Court Case No. CR2013-096

_____

_____

DAVID KENT THACKER, JR., (hereinafter referred to as " "Thacker"

files his brief.  Appellee, State of Texas, will be referred to as appellee.)

1

## STATEMENT OF THE CASE[1]

**A.    Nature of the Case**

Thacker appeals from a conviction for a third degree felony enhanced to habitual driving while intoxicated offense. (CR.6-8, 423).   It was  alleged that on or about the 15th day of September, 2012 that Thacker operated a motor vehicle in a public place while intoxicated and that prior to the commission of this offense that he had been legally convicted two or more times of offenses relating to the operating of motor vehicles while intoxicated. (CR.6-8).   Thacker pleaded not guilty. (CR. 25). The jury found Thacker guilty of a third degree felony enhanced to habitual driving while intoxicated offense, and the trial court on the jury's recommendation assessed punishment at confinement for Life. ( CR. 413).

**B.    The Course of Proceedings**

On March 13, 2013  Thacker was indicted  as a third degree felony enhanced to habitual driving while intoxicated offense. (CR. 6-8).   It was  alleged that on or about the 15th day of September, 2012 that Thacker operated a motor vehicle in a public place while intoxicated and that prior to the commission of this offense that he had been legally convicted two or more times of offenses relating to the

[1]Undersigned counsel has prepared this brief in reliance on the electronic record on appeal, which contains the Clerk's Record and any reference to a document filed in this case, or to a portion of these documents will be made by "CR" page number, or numbers, and the trial court transcript, with reference to this document or portion thereof being made in the following manner: "TR. [volume number]:[page number]."

operating of motor vehicles while intoxicated. *Id*.

New Braunfels Police Department Officer    Flugrath after arresting Thacker for driving while intoxicated  requested that Thacker give a voluntary blood sample, which Thacker refused to provide. (TR. Vol. 4, 109).  Acting on the response from dispatch that Thacker  had  at least two previous convictions for driving while intoxicated and took Thacker to Christus Santa Rosa New Braunfels for a warrantless blood draw. (TR. Vo. 2, 42-43 ).

On July 30, 2013 Thacker waived arraignment and entered a plea of not guilty to the indictment. (CR. 80).

On October   10, 2013 the trial court denied Thacker's motion   to suppress his arrest and his motion to suppress his warrantless blood draw. (CR. 432). On January 23, 2015, on reconsideration, the trial court granted Thacker's motion to suppress the warrantless blood draw results. (CR. 146).

On August 14, 2014 Thacker elected to have punishment assessed by the jury. (CR.143).

Thacker  stipulated to the jurisdictional priors  pursuant to *Tamez v. State*, 11 S.W. 3d  198  (Tex.Crim.App. 2000), and on the condition that  if he stipulated to the jurisdictional prior convictions, the State not only would  not have to present evidence of those prior convictions during the guilt phase of trial but would barred

3

from doing so. *Robles v. State*, 85 S.W.3d 211, 212 (Tex.Crim.App. 2002) ( TR. Vol. 4,8-9)[2]

## C.    Trial Court's Disposition of the Case

On the trial court on the jury's recommendation assessed punishment at confinement for Life in the Texas Department of Corrections-Institutional Division. (TR. Vol. 5,76). A Notice of Appeal was filed on January 30, 2015. (CR. 423).

---

2 Namely, Thacker stipulated to previous driving while intoxicated offenses as follows: 1. In Cause Number 93-CR-113, in the County Court at Law of Comal County, Texas on or about the 18th day of March, 1993; and 2. In Number 9723-95, in the County Court of Kendall County, Texas,on or about the 19th day of October, 1995." ( TR. Vol. 8, 39)

## STATEMENT REGARDING ORAL ARGUMENT

Thacker respectfully requests oral argument. Oral discussion of the facts and the applicable precedent would benefit the Court.

## ISSUES PRESENTED FOR REVIEW

**POINT OF ERROR NO. ONE**

**WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT THACKER'S MOTION TO SUPPRESS ANY AND ALL EVIDENCE STEMMING FROM HIS DETENTION WHICH WAS MADE WITHOUT A WARRANT AS THE OFFICER DID NOT HAVE AN OBJECTIVE BASIS FOR THE DETENTION**

**POINT OF ERROR NO. TWO**

**WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT THACKER'S MOTION TO SUPPRESS ORAL STATEMENTS AS THEY WERE CUSTODIAL INTERROGATIONS THAT VIOLATED THE LAW.**

**POINT OF ERROR NO. THREE**
**WHETHER THE EVIDENCE WAS LEGALLY INSUFFICIENT TO CONVICT THACKER OF "OPERATING" A MOTOR VEHICLE**

**POINT OF ERROR NO. FOUR**
**WHETHER THE EVIDENCE WAS LEGALLY INSUFFICIENT TO CONVICT THACKER OF OPERATING A MOTOR VEHICLE IN A "PUBLIC PLACE".**

**POINT OF ERROR NO. FIVE**
**WHETHER THE EVIDENCE WAS LEGALLY INSUFFICIENT TO CONVICT THACKER OF OPERATING A MOTOR VEHICLE WITHOUT NORMAL USE OF FACILITIES.**

`

**POINT OF ERROR NO. SIX**

**WHETHER THACKER'S LIFE SENTENCE WAS CRUEL AND UNUSAL PUNISHMENT.**

## STATEMENT OF FACTS

### A. Officer Jason Tucker

On Saturday September 14, 2012 at 11:15 p.m. Officer Jason Tucker ("Officer Tucker") was dispatched to the 1400 block of FM 306 in reference to a stalled vehicle that was parked near the railroad tracks. Upon arrival in the area he located a 1990 Maroon Cadillac parked parallel along the railroad tracks. (TR. Vol. 4 55). The vehicle was approximately 20 to 25 feet off the roadway. *Id.* Officer Tucker initially had difficulty finding the vehicle because it was not close to the roadway "where normally a vehicle would be...." (TR. Vol. 4, 56). The vehicle was not on top of the tracks but it was parked so close to the tracks a passing train would have struck the vehicle. (TR. Vol.4, 57). The property was a part of the Union Pacific railroad easement. (TR. Vol. 4, 69). Officer Tucker testified that although he had been in the area generally before, he had never seen other vehicles on that railroad easement. *Id.*

Officer Tucker had police dispatch contact the Union Pacific railroad company to stop all trains on that track until the vehicle could be moved to a safer location. (TR. Vol. 59). The vehicle was running.(TR. Vol. 55).

It was dark and there were no other lights other than those of Officer Tucker's patrol car. (TR. Vol. 4, 68). Officer Tucker turned his patrol car around

7

and shined his lights on the vehicle. (TR. Vol. 4, 57). Officer Tucker didn't see any headlights or brake lights illuminated on the vehicle. (TR. Vol. 4, 67). Officer Tucker testified that based on his training and experience if Tucker had had his foot on the brake petal the brake lights would have been on. (TR. Vol. 4, 68). Additionally, the vehicle was parked. (TR. Vol. 4, 68). Thacker cut the engine off after being awakened by Officer Tucker. *Id.*

Officer Tucker had to step over the rail because Thacker's vehicle was so close to the railway. *Id* Officer Tucker testified that he "... looked over to the driver's side of the vehicle; saw a person slumped over, sound asleep, in – inside the vehicle. I was able to shake, bang on the window, yell, and scream, finally get him alert enough to make contact with him and see what was going on." *Id*. Officer Tucker testified that "It felt like an eternity because I'm worried about him getting hit by a train, but probably, I'd say, no less than two minutes; maybe one to two minutes total" to get the male subject, later identified as Thacker, out of the vehicle. (TR. Vol. 4, 57).

Thacker had a hard time putting on a flip-flop just to get out of the car. (TR. Vol. 4, 58). Upon Thacker exiting the vehicle Officer Tucker testified that he noticed Thacker was very unsteady on his feet and that he had to assist him by holding his arm to help him maintain his balance. (TR. Vol. 4, 58). Officer Tucker

8

brought Thacker over to the front of his patrol car which was away from the railroad track. (TR. Vol. 4, 58)

At that time Officer Tucker believed he was dealing with a person that would lead to a DWI charge or an intoxication investigation. (TR. Vol. 4, 59). As Officer Tucker spoke with Thacker he reported smelling a strong odor of alcoholic beverage coming from inside the vehicle. *Id.* Thacker was very sluggish with his reactions, bloodshot eyes, kind of glassed over and slurred speech. (TR. Vol. 4, 59). Once a second officer, Officer Terry Flugrath arrived, conducted field sobriety testing and placed Thacker under arrest, Officer Tucker conducted an inventory of Thacker's car. ((TR. Vol. 4, 64).

Officer Tucker had never met Thacker before. (TR. Vol. 4, 71). He knew nothing about his physical or mental condition. (TR. Vol. 4,71.). Thacker was able to provide his driver's license number by memory. (TR. Vol. 4,72). Thacker was also able to provide his Zip Code, birthdate and Social Security number. *Id.*

During a post-arrest inventory of Thacker's vehicle Officer Tucker located a Calypso Spiced Rum bottle in the front passenger side floor board. The bottle of rum had been open and was 3/4 full. (TR. Vol. 4, 71). Officer Tucker did not make a determination if, or when Thacker had drank any of the bottle's contents. (TR. Vol. 4, 71).

9

**B.    Officer Terry Flugrath**

In the late hours of September 14th while on patrol,  Officer Terry Flugrath ("Officer  Flugrath") was dispatched to  the  1400 block  of FM  306 to assist K-9 Officer Tucker, who  had been  dispatched  to the area  for a  stalled    vehicle. (TR. Vol. 4, 88). Upon his  arrival, he observed Officer Tucker speaking to a male, who from a distance appeared to be disoriented.  *Id*.  After speaking to Officer Tucker briefly  Officer Flugrath made contact with Thacker. *Id*.  Officer Flugrath set up the camera to document his  interactions with the Thacker. (TR. Vol. 4, 90).

Officer Flugrath directed Thacker to join him in front of  his police vehicle. *Id*. Officer Flugrath determined there was a strong order of alcohol coming from Thacker's  breath  and  person. *Id*.  Officer  Flugrath  opinion  was  because  the vehicle's motor had been running "Basically, that would put him in control of the vehicle." (TR. Vol. 4,100).  Officer Flugrath then sought to have Thacker perform three  National  Highway  Traffic  Safety  Administration  standardized  test- the horizontal gaze nystagmus, the walk-and-turn, and  the one-leg stand. (TR. Vol. 4, 116).  Officer Flugrath also sought to have Thacker perform two non standardized test- putting his head back and the ABC's. (TR. Vol. 4, 118). Officer Flugrath had no medical training. *Id.*

Officer  Flugrath  admitted  that  there  were  24  National  Highway

Transportation Association driving clues that are predictors of DWI. (TR. Vol. 4, 120). None of these clues where part of his judgment in arresting Thacker for driving while intoxicated. (TR. Vol. 4, 126). Officer Flugrath did not know whether Thacker had had anything to drink while he was parked parallel to the railroad track. *Id*. Officer Flugrath admitted with respect to the horizontal gaze nystagmus test "you can't look at their eyes and tell what their blood level is going to be" and that he did not known what level of blood alcohol eye jerkiness began. (TR. Vol. 4, 134).

When Officer Flugrath was asked whether he made a determination as to when Thacker had consumed alcohol, he stated "I believe the one answer he gave me was he'd gotten to his friend's around – at one time he said 10:30; at one time he said 9:30. So somewhere in that time frame between 9:30 and – or after 10:30 somewhere in that time frame. He never would exactly say. This is what I had at this time." (TR. Vol. 4, 126). Further Officer Flugrath did not know whether or not Thacker had anything to drink while he was parked parallel to the railroad track. *Id.*

## SUMMARY OF THE ARGUMENT

The trial court erred in failing to grant Thacker's motion to suppress any and all evidence stemming from his detention which was made without a warrant as the officer did not have objective basis for the detention. The trial court made few if any findings of fact, therefore Officer Tucker and/or Officer Flugrath's determination of reasonable suspicion should be reviewed *de novo* on appeal, with deference to judges' findings of historical facts.

The trial court erred in failing to grant Thacker's motion to suppress oral statements as they were custodial interrogations that violated the law. At the time of removing Thacker from his vehicle Officer Tucker believed he was dealing with a person that would lead to a DWI charge or an intoxication investigation. (TR. Vol. 4, 59). Thus the "care-taking" function terminated and Thacker should have been read his *Miranda* rights before further questioning continued.

The evidence was legally insufficient to convict Thacker of "operating" a motor vehicle. Given the totality of the circumstances the State failed to demonstrate that Thacker took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use. Further, the evidence was legally insufficient to convict Thacker of operating a motor vehicle in a "public place". Thacker's vehicle was approximately 20 to 25 feet off the roadway. *Id.*

12

Officer Tucker initially had difficulty finding the vehicle because it was not close to the roadway "where normally a vehicle would be...." (TR. Vol. 4, 56). Nor did the State provide sufficient evidence that the remote railway easement was normally used by the public as would be the case with a parking lot, military base, gated community or other area that could be associated with the purpose of the Texas driving while intoxicated law -protecting the safety of those traveling on the roads by prohibiting intoxicated persons from driving a vehicle.

The evidence was legally insufficient to convict Thacker of operating a motor vehicle without normal use of facilities. In Texas every person who drinks alcoholic beverages will not automatically become intoxicated under our driving while intoxicated (DWI) statute. Here the law officers' knew nothing of Thacker's mental of physical condition without any alcoholic beverages. Further the law officers did not know whether Thacker had consumed alcoholic beverages while "parked" along the railroad.

Lastly, Thacker's life sentence was cruel and unusual punishment. An objective comparison of the gravity of the offense against the severity of the sentence reveals the sentence to be extreme. Alcoholism is an addiction. This is not a crime of violence. Additionally, the life sentence does not further the purposes of the Texas DWI law.

13

**POINT OF ERROR NO. ONE**

**THE TRIAL COURT ERRED IN FAILING TO GRANT THACKER'S MOTION TO SUPPRESS ANY AND ALL EVIDENCE STEMMING FROM HIS DETENTION WHICH WAS MADE WITHOUT A WARRANT AS THE OFFICER DID NOT HAVE OBJECTIVE BASIS FOR THE DETENTION**

The trial court abused its discretion in denying Thacker's motion to suppress because Officer Flugrath did not have sufficient reasonable suspicion to believe Thacker had committed a traffic violation and was without an objective reason for initiating the driving while intoxicated tests on Thacker.

**A.    Standard of Review**

This Court reviews a motion to suppress evidence under a bifurcated standard. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *Id.* But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, this Court review the trial judge's ruling de novo. *Id.* Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of law that is reviewed de novo on appeal. *Ornelas v. United States*, 517 U.S. 690, 699 (1996) (holding that determination of reasonable suspicion should be reviewed *de novo* on appeal, with

14

deference to judges' findings of historical facts); *State v. Mendoza*, 365 S.W.3d. 666, 670 (Tex. Crim. App. 2012).

Accordingly, when a trial judge rules on a motion to suppress and makes explicit factual findings, an appellate court must determine whether the findings are supported by the record, using an abuse of discretion standard and giving the trial court almost "total deference." *See State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) ("When the trial judge makes explicit findings of fact, we afford those findings almost total deference as long as the record supports them, regardless of whether the motion to suppress was granted or denied."). The Court must then undertake a *de novo* review when considering whether the findings of fact support the legal conclusions of the trial court. *State v. Sheppard*, 271 S.W. 3d 281, 288 (Tex. Crim. App. 2008).

## B. Applicable Law

To suppress evidence because of an alleged violation of the Fourth Amendment to the United States Constitution the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W. 3d 666, 672 (2007). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Id.* Once the defendant has made this showing, the State has the burden of proof to

establish that the law enforcement officer conducted the search or seizure pursuant to a warrant or that he acted reasonably. *Id.* at 672-73. The Fourth Amendment permits a warrantless detention of a person if the detention is justified by reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 28 (1968); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). "[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185 (2004).

Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011). These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to a crime. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). "Although an officer's reliance on a mere `hunch' is insufficient to justify an investigatory stop, . . . the likelihood of criminal activity need not rise to the level required for probable cause." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). The test for reasonable suspicion focuses solely on whether an objective basis

exists for the detention and disregards the officer's subjective intent. *Terry*, 392 U.S. at 21-22 ; *York*, 342 S.W.3d at 536 .

A reasonable suspicion determination requires looking at the totality of the circumstances and reasonable suspicion may exist even if those circumstances standing alone may be just as consistent with innocent activity as with criminal activity. *York*, 342 S.W.3d at 536. Courts have considered an officer's testimony that activity occurs in a high crime area as support for the existence of reasonable suspicion. *See Castleberry*, 332 S.W.3d at 368. However, this fact is not sufficient, on its own or in conjunction with other purely speculative evidence, to create reasonable suspicion. *See Gamble v. State*, 8 S.W.3d 452, 454  (Tex. App.-Houston [1ˢᵗ Dist.] 1999, no pet.).

**C.     Care-taking Function Did Not Justify Continued Traffic Stop Investigation**

"The   Amendment [of the United States Constitution] proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth  Amendment —subject only to a few specifically established and well-delineated exceptions.'"*Mincey v. Arizona*, 437 U.S. 385, 390  (1978).

In *Cady v. Dombrowski*, 413 U.S.  433 (1973), the United States Supreme

17

Court established what has become known as the "community-caretaking" exception to the warrant requirement in recognizing that police officers may contact citizens "and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. at 441, 447-48. But the *Cady* Court acknowledged that the Fourth Amendment requires reasonableness. *Id. at* 339.

In recognizing the community-caretaking function as an exception, the Tex.Crim.App stated in *Wright v. State,* 7 S.W.3d 148,151 (Tex. Crim.App.1999) that "[a]s a part of his duty to 'serve and protect,' a police officer may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe *is in need of help*". However, "a police officer may not properly invoke his community caretaking function if he is primarily motivated by a non-community caretaking purpose." *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim.App.2002).

Whether an officer properly invoked his community-caretaking function requires a two-step inquiry: (1) whether the officer was primarily motivated by a community-caretaking purpose; and (2) whether the officer's belief that the individual needs help was reasonable. *Id.*

To determine the reasonableness of the police officer's belief that an individual needs assistance, the *Wright* court proposed a non-exclusive list of factors that courts may consider: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and (4) to what extent the individual — if not assisted — presented a danger to himself or others. *Wright,* 7 S.W.3d at 151-52.

The *Wright* factors were intended to assist courts in determining reasonableness in this context; they are not elements of reasonableness. *Gonzales v. State*, 369 S.W.3d 851, 855 ftn 18 (Tex.Cr.App. 2012).

### D. Analysis

Here the trial court made very few, if any, specific findings of fact. Consequently, the only objective facts from the findings of fact this Court is left to consider in its appellate *de novo* review of the court's conclusions of law are that Officer Flugrath approached Thacker who was standing next to another police cruiser after his vehicle had been moved from its parked position along side a railroad track. (TR. Vol. 4, 88). This is not enough to support a claim of reasonable suspicion to detain.

The trial court made limited findings of fact regarding the officers'

19

testimony therefore, this Court must give the court discretion to disbelieve the officer's testimony in this regard. *See Guzman*, 955 S.W. 2d at 89. However, even if this Court were to determine that the trial court believed all of the officers' testimony, these facts would be insufficient to lead a reasonable officer to conclude that Thacker had committing or was about to commit a crime, as this evidence was too speculative to support a rational inference driving while intoxicated or other crime could be in progress. *See York*, 342 S.W.3d at 536. The officers testimony did not establish enough facts about the specific situation which, in conjunction with Officer Flugrath's knowledge of driving while intoxicated violations would support a reasonable suspicion of such a violation by Thacker. *See Gamble*, 8 S.W.3d at 454. There is no evidence of when Thacker drove on the highway or that he was legally intoxicated at that time. Further on the facts of this case he could have parked along side the railroad track, drank rum from the bottle, then fell asleep.

Therefore, given the totality of the circumstances as determined from the trial court's, at best, limited findings of fact and Officer Flugrath's speculative testimony, this Court should find that Officer Flugrath lacked reasonable suspicion to detain Thacker. *See Terry*, 392 U.S. at 21-22; *York*, 342 S.W. 3d 536.

20

**POINT OF ERROR NO. TWO**

**THE TRIAL COURT ERRED IN FAILING TO GRANT THACKER'S MOTION TO SUPPRESS ORAL STATEMENTS AS THEY WERE CUSTODIAL INTERROGATIONS THAT VIOLATED THE LAW.**

Thacker asserts that he was questioned while in custody without being first warned of his rights and without voluntarily waiving those rights, and that any evidence obtained as part of that questioning should not be used against him at trial. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966); *see also* Tex. Code Crim. Proc. Ann. Art. 38.22 . *Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex.Crim.App. 1996).

**A. Standard of Review**

In reviewing a trial court's ruling on a *Miranda*-violation claim, an appellate court conducts a bifurcated review: it affords almost total deference the trial judge's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor, and it reviews *de novo* the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor. *Ripkowski v. State*, 61 S.W/3d 378, 381-52 (Tex.Crim.App. 2001) (citing *Guzman v. State*, 955 S.W.2d 85,89 (Tex.Crim.App. 1997)). The decision as to whether custodial questioning constitutes "interrogation"

21

under *Miranda* is a mixed question of law and fact, and  appellate court's defer to the trial court's fact findings that turn on an evaluation of credibility and demeanor. *See id.* If credibility and demeanor are not necessary to the resolution of an issue, whether a set of historical facts constitutes custodial interrogation under the Fifth Amendment is subject to *de novo* review because that is an issue of law: it requires application of legal principles to a specific set of facts. *See id.; see also Riley v. United States*, 923 A.2d 868, 883-84 (D.C.App. 2007), *cert. denied*, 555 U.S. 830, (2008) ("[W]e review *de novo* whether the defendant's rights were `scrupulously honored' and whether the police conduct constituted `interrogation' because these are questions of law.").

## B. Custodial Interrogation

Being in custody is distinguishable from being held as part of a temporary investigative  detention. *See Abernathy v. State*,   963 S.W.2d 822, 824 n. 4 (Tex.App.-San Antonio 1998, pet. ref'd). An officer who lacks probable cause but whose observations led to a reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke the suspicion. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see also Terry v. Ohio*, 392 U.S. at 30 (discussing an officer's restricted search when he reasonably concludes that

criminal activity may be afoot). The officer may ask a moderate number of questions to determine the person's identity and to try to gather information to confirm or dispel the officer's suspicions. *McCarty*, 468 U.S. at 439.

Like a temporary investigative detention, a traffic stop does not exert "upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Id.* at 437. This is for two reasons: Traffic stops tend to be brief, so drivers expect to answer a few questions and be on their way shortly. Also, traffic stops tend to be in public rather than at a station house, so drivers do not feel completely at the mercy of the police. *Id.* at 437-39. Neither of these circumstances existed in this case. After the care-taking investigation Thacker was not released.

In this case it is important to observed that in determining whether an individual was in custody the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement to the degree associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983). The relevant question is not the officer's subjective intent, but rather how a reasonable person in the suspect's position would have understood the situation. *McCarty*, 463 U.S. at 442. The "reasonable person" standard assumes an innocent person. *Dowthitt*, 931

S.W.2d at 254. The officer's subjective view that the individual under questioning is a suspect, if undisclosed, is irrelevant to the question of whether an individual is in custody for *Miranda* purposes. *Stansbury v. California*, 511 U.S. 318, 324 (1994).

The traffic stop in this case was not an investigative detention based on a reasonable suspicion that a crime was being committed. Specifically, no one, law enforcement or otherwise, had observed Thacker speeding, weaving between lanes without signaling, or otherwise engage in activity that might be associated with a traffic offense. The questioning and field sobriety tests occurred at a private railway easement in the middle of the night. Thacker would have felt completely at the mercy of the police and would not have expected to be able to proceed along his way if he passed the field sobriety tests. Because Thacker was in custody when he made the oral statements, the statements were improperly admitted against him at trial.

**POINT OF ERROR NO. THREE**
**THE EVIDENCE WAS LEGALLY INSUFFICIENT TO CONVICT THACKER OF "OPERATING" A MOTOR VEHICLE**

Thacker asserts that the evidence is legally insufficient to prove he committed the offense of driving while intoxicated. In particular, he asserts that there is no evidence that he was "operating" a motor vehicle while intoxicated.

24

When reviewing the sufficiency of the evidence to support a conviction, this Court consider all of the evidence in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319(1979); *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt. *Carrizales v. State*, 414 S.W. 3d 737, 742 (Tex. Crim. App. 2013); *Hooper v. State*, 214 S.W. 3D 9, 13 (Tex. Crim. App. 2007).

Restated the issue on appeal is not whether this Court believes the State's evidence or believes that Thacker's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d. 830, 846 (Tex. Crim. App.1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App.

25

1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, this Court presumes the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43,47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, this Court will affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

The State convicted Thacker of driving while intoxicated under section 49.04 of the Texas Penal Code. Thus, it was obligated to have shown, beyond reasonable doubt, that Thacker was "intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2013).

One is intoxicated when he lacks the normal use of his mental or physical faculties by reason of the introduction of alcohol, among other substances, into his body or when having a blood alcohol concentration of 0.08 or more. *Id.* § 49.01(2). And, though the statute does not define the term "operate," our Court of Criminal Appeals has held that a person operates a vehicle when the totality of the circumstances demonstrate that he "took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Kirsch v. State*, 357 S.W.3d 645, 650-51 (Tex. Crim. App. 2012); *Denton v. State*, 911 S.W.2d 388,

26

389 (Tex. Crim. App. 1995), *quoting Barton v. State*, 882 S.W.2d 456 (Tex. App. —Dallas 1994, no pet.). In other words, the circumstances must illustrate that the "defendant exerted personal effort upon his vehicle for its intended purpose." *Denton v. State*, 911 S.W.2d at 389, *quoting Barton v. State, supra*. Thacker contends that the State failed to prove he was operating the vehicle as contemplated by the statute.

The record illustrates that Officer Tucker found Thacker alone, slumped over, asleep in the seat of his car in the middle of the night of September 14, 2012. (TR. Vol. 4, 55) The vehicle was parked on a private railroad easement, along Union Pacific railroad tracks. *Id*. The vehicle was at least 20 to 25 feet from a public roadway. *Id*. So far from the highway that Officer Tucker at first had difficulty even finding the vehicle.(TR. Vol. 4, 56). While its motor was running, its transmission was not engaged; that is, it was in park. (TR. Vol. 4, 68). No signs of containers holding alcoholic substances were found around the vehicle until after Thacker had been arrested for driving while intoxicated. (TR. Vol. 4, 71). How long Thacker and his vehicle were at the locale went unmentioned, as did the time at which he arrived there.

Whether Thacker began ingesting alcoholic substances at a locale prior to arriving at the private railroad easement went undeveloped, as did whether

Thacker had ingested intoxicating substances while parked.

There is no evidence of the vehicle's transmission being engaged, as in *Dornbusch v. State*, 262 S.W.3d 432 (Tex. App.—Fort Worth 2008, no pet.).[3] Although Thacker had driven the car, as in *Reynolds v. State*, 744 S.W.2d 156 (Tex. App.—Amarillo 1987, pet. ref'd) there is no record that he had consumed intoxicating substances prior to driving or that he was legally intoxicated while driving[4]. Nor was the vehicle running while actually on the roadway, as in *Barton v. State*, *supra* and *Pope v. State*, 802 S.W.2d 418 (Tex. App.—Austin 1991, no pet.) and *Hernandez v. State*, 773 S.W.2d 761 (Tex. App.—San Antonio 1989, no pet.). Nor was the vehicle found running in a moving lane of traffic, as in *Hearne v. State*, 80 S.W.3d 677 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Nor is there evidence that Thacker attempted to manipulate the vehicle's controls, like the steering wheel, gear lever, brakes, or accelerator, as in *Barton v. State*, *supra*, or *Hernandez v. State*, *supra*. Each of those prosecutions may have involved someone finding someone awake or asleep behind a steering wheel of an idling car, yet, each had more indicia allowing a fact finder to reasonably infer that the accused took action to affect the functioning of his vehicle in a manner that would enable

---

3  Indeed, that the car was in gear was the determinative factor according to the justice who concurred in *Dornbusch v. State*, 262 S.W.3d 432, 438-39 (Tex. App.—Fort Worth 2008, no pet.) (concurring).

4  Although Thacker had consumed alcohol the evidence was insufficient to determine when and where he consumed alcohol at levels to be legally intoxicated under the DWI law.

the vehicle's use or that the defendant exerted personal effort upon his vehicle for its intended purpose. Here, however, Thacker was simply found asleep in a running vehicle while parked off the roadway and totally on a private railway easement.

In this case there is no direct or circumstantial evidence appears of record enabling a reasonable fact finder to infer that Thacker operated his vehicle while intoxicated.

**POINT OF ERROR NO. FOUR**

**THE EVIDENCE WAS LEGALLY INSUFFICIENT TO CONVICT THACKER OF OPERATING A MOTOR VEHICLE IN A "PUBLIC PLACE".**

Thacker asserts that the evidence is legally insufficient to prove he committed the offense of driving while intoxicated because there is no evidence that he was operating a motor vehicle in a "public place" while intoxicated.

A public place is defined as "any place to which the public or a substantial group of the public has access." Tex. Pen. Code Ann. § 1.07(a)(40). The remaining portion of section 1.07(a)(40) contains a nonexclusive list of illustrative examples, including "but not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." In determining whether a place is public, the relevant inquiry is whether the public has access to it. *Shaub v. State,* 99 S.W.3d 253,256 (Tex.App.-Fort Worth 2003,

29

no pet.); *Loera v. State*, 14 S.W.3d 464, 467 (Tex.App.-Dallas 2000, no pet.); *State v. Nailor*, 949 S.W.2d 357 (Tex.App.-San Antonio 1997, no pet.). When proof is sufficient courts have held that parking lots that are plainly open to the public or a substantial group of the public are public places. *See e.g. Holloman v. State,* No. 11-95-275-CR, 1995 WL 17212433 (Tex.App.—Eastland 1995) *(not designated for publication).*

> *The parking lot was a common area for the complex. The manager of the complex testified that the entire complex was surrounded by a metal fence, that the complex had between 200 and 300 residents, and that the parking lot was a common area for the complex. When a resident moved into the complex, the resident received a "gate card" which would "electronically trigger the gate*

*Also see e.g., In re W.T.O.*, No. 03-01-00630-CV,2002 Tex. App. LEXIS 8214, at *7 (Austin Nov. 21, 2002, no pet. h.) (mem. op.) (apartment house parking lot); *Nailor,* 949 S.W.2d at 359 (hotel parking garage even though people must pay to enter); *Kapuscinski v. State*, 878 S.W.2d 248, 250 (Tex.App.-San Antonio 1994, pet. ref'd) (mall parking lot); *Thibaut v. State*, 782 S.W.2d 307, 309 , (Tex.App.-Eastland 1989, no pet.) (parking lot of condominium complex).

However these parking lot cases are distinguishable because here the record is devoid of testimony that would reasonably support a finding that the private railroad easement away from the roadway was plainly open to the public.

Second "access" is commonly defined as "an opportunity or ability to

30

enter, approach, pass to and from, or communicate with." Black's Law Dictionary 13 (7th ed. 1999). Generally, the front yard of a residence and areas leading to the porch are all locations to which the public might have access. *See Loera,* 14 S.W.3d at 469 . It has further been recognized "that anyone, be it law enforcement officer or common citizen, has the right to approach an appellant's front door." *Cornealius v. State,* 900 S.W.2d 731, 734 (Tex.Crim.App. 1995). However the record is devoid that anyone had a similar right to be upon the private railroad easement when Thacker was initially located.

Third, this case is similar to *Commander v. State,* 748 S.W.2d 270 (Tex. App.-Houston [14th Dist.] 1988, no writ), in which an officer saw the defendant leaning against a van in a private driveway. 748 S.W.2d at 272. The defendant's eyes were glassy, he smelled of alcohol, and he seemed unsteady. *Id.* The *Commander* court held that "under the limited circumstances presented" the officer *did not* have sufficient probable cause to arrest the defendant for public intoxication. *Id.*

Moreover this case is in contrast to *State v. Nailor*, 949 S.W.2d 357, 359 (Tex.App.-San Antonio 1997, no pet.). The issue in *Nailor* was determining whether a place was "public" by asking whether the public could enter the premises. Nailor had been arrested for driving while intoxicated in a Holiday Inn

parking lot that was open to the public 24 hours a day. The evidence also showed that Holiday Inn advertised and rented monthly parking permits and in fact, solicited the public to use the lot. Thus, *Nailor* and similar cases should not be controlling and extended to the facts presented here.

This case is closer to *Fowler v. State*, 65 S.W.3d 116 (Tex.App.—Amarillo 2001, no pet.) (Unpaved driveway of a rural residence located approximately 1/4 mile from a country road in an isolated and secluded part of county was not a "public place." ). As in *Fowler* although it is reasonable to infer that Thacker traveled on a public road to arrive where he was parked along the private railway easement, *see Loera v. State*, 14 S.W.3d at 468, the State did not attempt to establish when Thacker entered the railway easement or his state of intoxication at that time he had been on the highway.

### POINT OF ERROR NO. FIVE

**THE EVIDENCE WAS LEGALLY INSUFFICIENT TO CONVICT THACKER OF OPERATING A MOTOR VEHICLE WITHOUT NORMAL USE OF FACILITIES.**

`

In Texas every person who drinks alcoholic beverages will not automatically become intoxicated under our driving while intoxicated (DWI) statute Tex. Pen. Code Ann. § 49.04 *Findlay v. State*, 9 S.W.3d 397, 400 (Tex.App.-Houston [14th Dist.] 1999). The purpose of the statute is to protect the safety of those traveling on the roads by prohibiting intoxicated persons from driving a vehicle. *Id* In

32

contrast   the DUI statute, by contrast, was enacted as part of a "zero tolerance" standard for minors driving under the influence of alcohol in an effort to prevent the loss of federal highway funding.   *Senate Criminal Justice Comm., Bill Analysis*, Tex. S.B. 35, 75 th Leg., R.S. (1997).   Further, the statute was enacted to "create a separate offense for driving under the influence of alcohol."  *Id.* The DUI statute itself provides that DUI is not a lesser included offense of DWI. Tex. Alco. Bev.Code Ann. § 106.041(g) (Vernon Supp.1998).

Assuming *arguendo* that the  evidence supports a finding that Thacker was intoxicated at the   time of Officer Tucker's   and/or Officer Flugrath's encounter with him, neither this evidence nor any evidence introduced at trial constitutes independent evidence of (1) how recently the vehicle was driven or (2) how much time elapsed between  when Thacker had driven and  his discovery along side the railway by Officer Tucker. *See Stoutner v. State*, 36 S.W.3D 716, 721  (Tex.App.-Houston [1st  Dist.]2001,  pet.  ref'd); *Weaver v. State*,721  S.W.2d  495,  498 (Tex.App.-Houston [1st Dist.] 1986, pet. ref'd).   As stated  in  *Scillitani v. State*, 297 S.W.3d 498 (Tex.App.-Houston [14th Dist.] 2009) "If law enforcement officers do not observe an accused operating a motor vehicle, evidence that the accused was intoxicated when law enforcement officers arrived on the scene, alone, does not establish that the accused was intoxicated at the prohibited time —

while the accused was operating a motor vehicle in a public place. *See Stoutner*, 36 S.W.3d at 721; *Weaver*, 721 S.W.2d 495, 498. Absent evidence in the record establishing the time of the accident or of the accused's driving in a public place, the evidence is legally insufficient to show that the accused drove while he was intoxicated."

**POINT OF ERROR NO. SIX**

**THACKER'S LIFE SENTENCE WAS CRUEL AND UNUSAL PUNISHMENT.**

The jury convicted Thacker of the felony offense of driving while intoxicated, subsequent offense. Thacker's punishment was enhanced by two prior felony convictions for the offense of driving while intoxicated and he was assessed life sentence. Thacker asserts that the sentence of life imprisonment is "grossly disproportionate" to the offense that he committed and thus constitutes cruel and unusual punishment. Thacker preserved error on this point by making a timely, specific objection to the trial court. *See* U.S. Const. amend. VIII; *Graham v. Florida*, 560 U.S. 48, 59-60 (2010); *see also Ewing v. California*, 538 U.S. 11 (2003); *Harmelin v.Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983); *Rummel v.Estelle*, 445 U.S. 263 (1980). A sentence of life imprisonment or of similar length has been found not grossly disproportionate to a felony offense that is committed by a habitual offender, even when the felony is not

34

inherently violent in nature. *See, e.g., Rummel*, 445 U.S. at 284-85  (holding that sentence of life imprisonment for offense of obtaining $120.75 by false pretenses not excessive); *Winchester v. State*,  246 S.W.3d 386, 390-91  (Tex. App.-Amarillo 2008, pet. ref'd) (holding that consecutive life sentences for the offenses of retaliation and failure to appear were not grossly disproportionate because   of defendant's criminal history); *Vrba v. State*, 69 S.W. 3d 713, 716, 724-725 (Tex. App.-Waco 2002, no pet.) (holding that 60-year sentence for DWI conviction was not grossly disproportionate and did not violate defendant's Eighth Amendment rights because of defendant's prior criminal history). Nevertheless even though contrary to the unpublished opinion in  *Davidson v. State*, 03-13-00708-CR (Tex.App.-Austin 8-1-2014)   the issue is raised instantly for purposes of further review. A sentence is grossly disproportionate to a crime only when an objective comparison of the gravity of the offense against the severity of the sentence reveals the sentence to be extreme. *Harris v. State*, 204 S.W.3d 19, 29    (Tex. App.— Houston [14th Dist.] 2006, pet. ref'd); *Hicks v. State*, 15 S.W.3d 626, 632  (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). *Also see generally,  Nunn v. State*, 14-14-00704-CR (Tex.App.-Houston [14th Dist.] 4-9-2015) (unpublished). The life sentence in this case plainly meets this test.

## PRAYER

For the reasons stated in this brief, Thacker asks the court to reverse the trial court's order of adjudication and disposition.

Respectfully submitted,

Gerald C. Moton
11765 West Avenue, PMB 248
San Antonio, TX 78216
Tel: (210) 410-8153;Fax: (210) 568-4389
motongerald32@gmail.com
By: /s/Gerald C. Moton
Gerald C. Moton, TX SBN. 14596350
ATTORNEY FOR RESPONDENT

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Jennifer Anne Tharp for Appellee, Criminal District Attorney of Comal County, Texas, 150 N. Seguin Avenue, Suite 307, New Braunfels, Texas 78130-5122 by electronic delivery on this 17th day of April, 2015.

BY:/s/Gerald C. Moton
GERALD C. MOTON
*STATE BAR NO.:14596350*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. Relying on the word count function in the word processing software used to produce this document, I further certify that this document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 7285 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

BY:/s/<u>Gerald C. Moton</u>
GERALD C. MOTON
*STATE BAR NO.:14596350*